# EXHIBIT 3

## AFFIDAVIT OF ERIC LEE

I swear under penalty of perjury that the following is true and correct:

1. My name is Eric Lee, I am an attorney and I represent Momodou Taal, Sriram Parasurama and Mukoma Wa Ngũgĩ in Case 3:25-cv-00335-ECC. I am a member of the Bar of the State of Michigan and my bar number is P80058. My office is located at 24225 W 9 Mile Rd Ste 140. Southfield, MI 48033-3962. I have been admitted in the above-captioned matter *pro hac vice*.

2. I submit this affidavit pursuant to Local Rule 7.1(e). What follows is a detailed and specific elaboration of the reasons why the standard motion procedure cannot be used with regard to the underlying motion here and why reasonable advanced notice to the other parties is not practicable or appropriate here.

3. This morning, Wednesday, March 19, 2025 at roughly 10:45 AM, I was contacted by a resident of Mr. Taal's place of residence (a communal living area called "Telluride House" in Ithaca, New York) who informed me that undercover law enforcement officials were present at Mr. Taal's residence.

4. I called the individual to attempt to discern fact from rumor. The individual said he personally saw a strange vehicle in the parking lot which he had never seen before with a man in the vehicle who he did not recognize. He told me that there were two people who had seen the individual in the vehicle show them a badge indicating he is a member of law enforcement. I asked to be put in contact with any eye witnesses.

5. At roughly 11:30 AM I called the first of the two eye witnesses, Mr. Alaa Farghli, a resident of Telluride House and a recent graduate of Cornell. Mr. Farghli told me he noticed the strange vehicle that morning at roughly 10:00 AM when he was outside Telluride House. He noticed the House's chef, Mr. Wakee Thompson, who was throwing out garbage nearby. He said he witnessed Mr. Wakee approach the vehicle and ask the man seated in the driver's seat what he was doing there. Mr. Farghli told me he was roughly 10 feet away when he saw the driver show Mr. Wakee a law enforcement badge. Mr. Farghli did not see what agency was listed on the badge. I asked Mr. Farghli to put me in contact with Mr. Wakee, which he did.

6. I immediately called Mr. Wakee, who confirmed all pertinent details of what Mr. Farghli had told me. Mr. Wakee identified himself to me as a chef at the Telluride House. He saw the vehicle parked in the Telluride House parking lot and considered it a security concern. He approached the driver and informed the driver the parking lot was private property. The driver showed Mr. Wakee a law enforcement badge. Mr. Wakee told me the driver flashed the identification so quickly that he was not able to read the agency listed.

7. Both eye-witnesses agreed to submit affidavits, which are attached to this filing. I also spoke to a third eye-witness who, for personal security reasons, was not interested in providing an affidavit. That individual is also a resident of Telluride House, and he informed me that he saw two other unmarked vehicles surrounding Telluride House, also at roughly 10:00 AM this morning.

8. Upon information and belief, Defendants are presently attempting to detain Mr. Taal in retribution for his decision to file a lawsuit challenging the constitutionality of Defendants policies. I am also concerned that their actions are an attempt to render his recently-filed lawsuit moot or depriving this Court of jurisdiction over the matter. I believe this to be part of an emerging pattern and practice of unlawfulness by Defendants, exemplified by recent high-profile statements calling into question the legitimacy of Article Three court orders.

9. Given the government's apparent pattern of unlawful conduct and its ongoing efforts to detain and/or deport Mr. Taal, providing standard notice at this time would not be appropriate. As demonstrated by the foregoing, requiring reasonable notice to the government would result in substantial and irreparable prejudice to Mr. Taal. Given the government's demonstrated pattern of unlawful conduct, including its ongoing attempts to detain and deport Mr. Taal, advance notice would provide the very entity engaging in these actions with the opportunity to accelerate or conceal its efforts, effectively stripping Mr. Taal of his ability to seek protection through this Court. Such notice would not serve any legitimate procedural purpose but would instead facilitate the government's continued violation of his rights, increasing

his risk of immediate harm and rendering any relief sought in this proceeding meaningless. The risk is not hypothetical. It is imminent and real, and the Court's intervention is necessary to prevent a grave miscarriage of injustice.

Signed,

/s/Eric Lee                                                                Date:    March 19, 2025