# EXHIBIT 3

## **AFFIDAVIT OF ERIC LEE**

I swear under penalty of perjury that the following is true and correct:

1. My name is Eric Lee, I am an attorney and I represent Momodou Taal, Sriram Parasurama and Mukoma Wa Ngũgĩ in Case 3:25-cv-00335-ECC. I am a member of the Bar of the State of Michigan and my bar number is P80058. My office is located at 24225 W 9 Mile Rd Ste 140. Southfield, MI 48033-3962. I have been admitted in the above-captioned matter *pro hac vice*.

2. I submit this affidavit pursuant to Local Rule 7.1(e). What follows is a detailed and specific elaboration of the reasons why the standard motion procedure cannot be used with regard to the underlying motion here, and why immediate relief is required.

3. It appears the government is attempting to detain Mr. Taal imminently, an action which would cause irreparable harm by preventing counsel from remaining in constant contact with Mr. Taal during the pendency of this Court's adjudication of the merits of the Temporary Restraining Order filed on March 19, 2025.

4. Yesterday, Wednesday, March 19, 2025 at roughly 10:45 AM, I was contacted by a resident of Mr. Taal's place of residence (a communal living area called "Telluride House" in Ithaca, New York) who informed me that undercover law enforcement officials were present at Mr. Taal's residence.

5. I called the individual to attempt to discern fact from rumor. The individual said he personally saw a vehicle in the parking lot which he had never seen before with a man in the vehicle who he also did not recognize. The caller told me that there were two people who had seen the same man in the vehicle show them a badge indicating he is a member of law enforcement. I asked to be put in contact with any eye witnesses.

6. At roughly 11:30 AM I called the first of the two eye witnesses, Mr. Alaa Farghli, a resident of Telluride House and a recent graduate of Cornell. Mr. Farghli told me he noticed the strange vehicle that morning at roughly 10:00 AM when he was outside Telluride House. He noticed the House's chef, Mr. Wakee Thompson, who was throwing out garbage nearby. He said he witnessed Mr. Thompson approach the vehicle and ask the man seated in the driver's seat what he was doing there. Mr. Farghli told me he was roughly 10 feet away when he saw the driver show Mr. Thompson a law enforcement badge. Mr. Farghli did not see what agency was listed on the badge but he did see the badge. I asked Mr. Farghli to put me in contact with Mr. Thompson, which he did.

7. I immediately called Mr. Thompson, who confirmed all pertinent details of what Mr. Farghli had told me. Mr. Thompson identified himself to me as a chef at the Telluride House. He saw the vehicle parked in the Telluride House parking lot and considered it a security concern. He approached the driver and informed the driver the parking lot was private property. The driver showed Mr. Thompson a law enforcement badge. Mr. Thompson told me the driver flashed the identification so quickly that he was not able to read the agency listed.

8. Both eye-witnesses agreed to submit affidavits, which are attached to this filing. I also spoke to a third eye-witness who, for personal security reasons, was not interested in providing an affidavit. That individual is also a resident of Telluride House, and he informed me that he saw two other unmarked vehicles surrounding Telluride House, also at roughly 10:00 AM yesterday morning.

9. Upon information and belief, Defendants are presently attempting to detain Mr. Taal. In my ten years of experience as an immigration attorney, I have learned that it is common

practice for federal authorities to "stake out" a residence only when they are attempting to effectuate an arrest. Given my past experience I am not aware of any other reason why authorities would be present at Mr. Taal's residence.

10. If Mr. Taal is arrested, it will cause irreparable harm by rendering it exceedingly difficult for counsel to provide Mr. Taal with adequate legal representation. It will also seriously impede our ability to provide the Court with the information it will require to render judgment. We must be able to have unimpeded contact with Mr. Taal to confirm factual details involving his personal history. We anticipate receiving the government' response brief on Saturday at 5:00 P.M. and will need to be in constant and direct contact with Mr. Taal over the following 24 hours to confirm factual details and ensure that accurate information is being provided to the Court.

11. If Mr. Taal is detained, counsel will not be able to be in direct contact with him. We will not be able to confirm factual details about the case or to discuss legal strategy. In my experience as an immigration attorney, it is often not possible to contact a detained individual for several days after their arrest by immigration authorities. Even when contact is made with a detained individual, access to telephones is severely restricted. Especially given the expedited character of the briefing and hearing schedule set by this Court, it is critical that we be able to have direct access to Mr. Taal in the coming days.

12. We are particularly concerned about the possibility that if Mr. Taal is detained, he would be removed to a different jurisdiction. This would not only make it far more difficult to contact him (especially during the transfer period), it would also require the undersigned to first of all discern his whereabouts. Online mechanisms for checking a detainee's physical location are often not updated quickly enough, putting attorneys in the position

where they are forced to wait hours or even days to discern their client's physical location. This would also take time and resources away from complying with this Court's request for a reply brief due Sunday at 5:00 PM and would also undermine our ability to adequately prepare for Tuesday's 2:00 PM hearing.

13. Lastly, I am concerned that the government is attempting to undermine this Court's jurisdiction over the underlying Temporary Restraining Order by attempting to either place Mr. Taal in removal proceedings or remove him from the district or the country. In other civil actions presently pending before the federal courts, plaintiffs and prominent legal scholars have expressed concerns over Defendants' refusal to comply with lawful court orders, including over the transfer of individuals in immigration detention.

14. For the aforementioned reasons, the standard motion procedure cannot be used with regard to the underlying motion here and immediate relief is required. I have notified the U.S. Attorney's office about this filing by telephone and fax.

Signed,

/s/Eric Lee                                           Date:  March 20, 2025