YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

JOHN A. SARCONE III
*United States Attorney*

KAREN FOLSTER LESPERANCE
*Chief, Civil Division*
*Office of the United States Attorney*
*Northern District of New York*

AUGUST E. FLENTJE
*Acting Director*

EREZ REUVENI
*Acting Deputy Director*

ETHAN KANTER
*Chief, National Security Unit*
*Office of Immigration Litigation*

PAUL STONE
*Deputy Chief, National Security Unit*
*Office of Immigration Litigation*

BENJAMIN MARK MOSS
*Senior Litigation Counsel*
*Office of Immigration Litigation*

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MOMODOU TAAL., *et al.*,

        Plaintiffs-Petitioners,

v.

DONALD J. TRUMP, in his official
capacity as President of the United States,
*et al.*,

        Defendants-Respondents.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:25-cv-335 (EEC/ML)

# DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINIARY INJUNCTION AND
# TEMPORARY RESTRAINING ORDER

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

    I.    Status of Taal's Student Visa ............................................................................... 2

    II.    The Executive Orders ........................................................................................ 5

    III.    Response to Court's March 21, 2025 Order .................................................. 6

ARGUMENT .................................................................................................................. 8

    I.    Legal Standard ................................................................................................... 8

    II.    The Court Lacks Jurisdiction Over Plaintiffs' Claims...................................... 9

        A.    The Claims Are Not Ripe ........................................................................ 9

        B.    The Plaintiffs Lack Standing .................................................................. 10

        C.    Article II Bars This Action. ..................................................................... 11

        D.    The INA Bars District Court Review...................................................... 13

        E.    The Court Lacks Jurisdiction to Review the U.S. Citizen-Plaintiffs' Challenge to Implementation of Removal Proceedings. ................................................... 17

        F.    Plaintiffs' Injunction Request Is Overbroad And  Unconstitutional............................. 19

    III.    Plaintiffs' Constitutional Claims Fail .......................................................... 20

        A.    Plaintiffs' First Amendment Claims Are Meritless ...................................... 20

        B.    The EOs Are Neither Unconstitutionally Vague nor Overbroad................................ 22

        C.    Strict Scrutiny Review Is Inapplicable Here............................................. 23

    IV.    Plaintiffs Will Not Be Irreparably Harmed Absent An Injunction Against The EOs .. 24

    V.    Plaintiffs Are Not Entitled To Relief ............................................................. 26

CONCLUSION.............................................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967)..................................................................................................... 10

*Aguilar,*
    510 F.3d ....................................................................................................... 16, 19, 25

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013)....................................................................................................... 11

*Americans for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021)..................................................................................................... 20

*Antonyuk v. Hochul,*
    635 F. Supp. 3d 111 (N.D.N.Y. 2022).......................................................... 9, 25, 26

*Armstrong v. Bush,*
    924 F.2d 282 (D.C. Cir. 1991)..................................................................................... 13

*Ass'n of Am. Physicians & Surgeons v. Clinton,*
    997 F.2d 898 (D.C. Cir. 1993).............................................................................. 13, 26

*Beckles v. United States,*
580 U.S. 256 (2017)....................................................................................................... 23

*Benham v. City of Charlotte, N.C.,*
    635 F.3d 129 (4th Cir. 2011) ...................................................................................... 12

*Bhaktibhai-Patel v. Garland,*
    32 F.4th 180 (2d Cir. 2022) ........................................................................................ 27

*Blanckensee,*
    994 F.3d 95 (2d Cir. 2021)............................................................................................ 2

*Block v. Community Nutrition Institute,*
    467 U.S. 340 (1984)...................................................................................................... 19

*Bluman,*
    800 F. Supp. 2d ............................................................................................................ 22

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ...................................................................................... 20

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..........................................................................................12

*Construction Trades Dept., AFL-CIO v. Allbaugh,*
   295 F.3d 28 (D.C. Cir. 2002)...........................................................................10

*Delgado v. Quarantillo,*
   643 F.3d 52 (2d Cir. 2011).................................................................................15

*Dep't of State v. Munoz,*
   602 U.S. 899 (2024)....................................................................................14, 21

*DSE, Inc. v. United States,*
   169 F.3d 21 (D.C. Cir. 1999)...........................................................................28

*Elgharib v. Napolitano,*
   600 F.3d 597 (6th Cir. 2010) ...........................................................................16

*Farkas v. Texas Instrument, Inc.,*
   375 F.2d 629 (5th Cir. 1967) ...........................................................................24

*Farmer v. Philadelphia Electric Co.,*
   329 F.2d 3 (3d Cir. 1964)..................................................................................24

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992)...........................................................................................13

*Freedom Holdings, Inc. v. Spitzer,*
   408 F.3d 112 (2d Cir. 2005)................................................................................9

*Gill v. Whitford,*
   585 U.S. 48 (2018).............................................................................................20

*Gnotta v. United States,*
   415 F.2d 1271 (8th Cir. 1969) ..........................................................................24

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
   481 F.3d 60 (2d Cir. 2007)..................................................................................9

*Guerrero-Lasprilla v. Barr,*
   140 S. Ct. 1062 (2020)......................................................................................19

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010)..............................................................................................27

*Humphries v. Various Fed. USINS Emps.*,
    164 F.3d 936 (5th Cir. 1999) ................................................................. 17

*J.E.F.M. v. Lynch*,
    837 F.3d .............................................................................................. 16

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ............................................................ 12

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) .................................................................. 2

*Jennings v. Rodriguez*,
    138 S. Ct 830 (2018) ............................................................................ 15

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) ................................................................ 17

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ............................................................................. 22

*Laird v. Tatum*,
    408 U.S. 1 (1972) ................................................................................. 11

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) ............................................................................. 18

*Louisiana v. Biden*,
    64 F.4th 674 (5th Cir. 2023) ................................................................. 12

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) ............................................................................. 19

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024) ............................................................................. 20

*Moore v. Consolidated Edison Co. of N.Y., Inc.*,
    409 F.3d 506 (2d Cir. 2005) ................................................................... 9

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ............................................................................... 11

*Myers v. United States*,
    272 U.S. 52 (1926) .......................................................................... 13, 27

*N.Y. Progress and Protection PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013).................................................................................. 9

*Nasrallah v. Barr*,
   590 U.S. 573 (2020)........................................................................................... 15

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior*,
   538 U.S. 803 (2003)........................................................................................... 10

*New York v. U.S. Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020)......................................................................... 9, 24, 26

*Nieves v. Bartlett*,
   587 U.S. 391 (2019)........................................................................................... 22

*Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*,
   306 F.2d 840 (2d Cir. 1962)................................................................................. 9

*Rauda v. Jennings*,
   55 F.4th 773 (9th Cir. 2022) ............................................................................. 17

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   ("AADC"), 525 U.S. 471 (1999) ................................................... 12, 14, 16, 27

*Robar v. Vill. of Potsdam Bd. of Trustees*,
   490 F. Supp. 3d 546 ........................................................................................ 2, 3

*Ruiz v. Mukasey*,
   552 F.3d 269 (2d Cir. 2009)............................................................................... 16

*Sanchez v. Sessions*,
   904 F.3d 643 (9th Cir. 2018) ............................................................................ 16

*Shaughnessy v. United States ex rel. Mezei*,
   345 U.S. 206 (1953)........................................................................................... 22

*Singh v. Mukasey*,
   553 F.3d 207 (2d Cir. 2009)............................................................................... 17

*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007) ............................................................................ 17

*State of Mississippi v. Johnson*,
   71 U.S. 475 (1866)............................................................................................. 13

*St. Joseph's Hospital Health Center v. American Anesthesiology of Syracuse, P.C.*,
    __ F.4th __ ,2025 WL 794367 (2d Cir. 2024) ................................................................ 24, 26

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) .......................................................................................... 9

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) ...................................................................................................... 18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................................................................... 12

*Texas v. United States*,
    523 U.S. 296 (1998) ...................................................................................................... 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...................................................................................................... 19

*Trump v. New York*,
    592 U.S. 125 (2020) ...................................................................................................... 10

*United States v. Hansen*,
    599 U.S. 762 (2023) ................................................................................................ 20, 21

*Williams v. New York City Hous. Auth.*,
    61 F.4th 55 (2d Cir. 2023) ........................................................................................... 2

*Winter v. NRDC*,
    555 U.S. 7 (2008) .......................................................................................................... 9

*Zuniga-Perez v. Sessions*,
    897 F.3d 114 (2d Cir. 2018) ......................................................................................... 17

## Statutes

8 U.S.C. § 1201(i) .......................................................................................... 4, 7, 14

8 U.S.C. § 1252 ................................................................................................ 1, 14

8 U.S.C. § 1252(b)(9) ......................................................................... 15, 16, 19, 27

8 U.S.C. § 1252(g) .................................................................................................. 16

8 U.S.C. §§ 1252(a)(5) ................................................................................................ 15, 18

U.S.C. § 1252(g) ........................................................................................................... 14

**INTRODUCTION**

The Court should deny the Plaintiffs' requests for a preliminary injunction and temporary restraining order. Their injunction filings press facial, constitutional challenges to two of the President's Executive Orders (EOs). Those challenges suffer basic defects: The EOs are largely internal-facing documents that are not subject to review. They have innumerable, obvious lawful applications, so striking down the provisions on a facial basis would be extraordinary. That request should fail.

It fails as well for lack of ripeness, standing, and a host of other jurisdictional and constitutional infirmities. During briefing, facts have come forward, by notice to the Court, that immigration authorities are initiating removal proceedings against Mr. Taal. To the extent Plaintiffs seek to transform this injunction proceeding into a forum to contest that impending action, they cannot do so, because the federal courts lack jurisdiction over such a claim. And the fact that such proceedings arise in part because of the President's EO relating to antisemitism does not change the analysis. Relevant here, the EO states a broad policy directive to the Government to combat "unlawful" antisemitic harassment and violence. That directive is undoubtedly lawful. If a plaintiff takes issue with how an executive agency *implements* that directive, using its existing legal authority, he should challenge that discrete action, within the bounds of Article III, and consistent with whatever statutory framework Congress has provided, including the well-established claim-channeling provisions of the INA at 8 U.S.C. § 1252.

For these reasons, and despite the Plaintiffs' effort to recast Taal's anticipated removal proceeding case as an emergent threat to free speech, there is no emergency justifying invocation of the Court's extraordinary power to enjoin lawful operations of the federal government; the Court lacks jurisdiction and should at a minimum deny the Plaintiffs' injunctive requests.

## BACKGROUND

### I.    Status of Taal's Student Visa

Plaintiff Momodou Taal, a native of The Gambia and citizen of the United Kingdom, last entered the United States on December 22, 2024, with an F-1 student visa, to study as a graduate student at Cornell University.  Decl. of Anthony Patrone ("Patrone Decl.") ¶ 3.

News sources reported that Cornell University suspended Taal on or around April 26, 2024, for his role in the pro-Palestinian Arts Quad encampment.[1]  *See also* Declaration of Roy M. Stanley ("Stanley Decl.") ¶ 6.   He failed to comply with University directives to remove the unauthorized encampment, cease unreasonably loud chants and behavior, and disperse.[2]  *See also* Stanley Decl. at ¶ 6.  Cornell suspended Taal a second time later that year in September for his involvement in disrupting a career.[3]  *See also* Stanley Decl. at ¶ 6.  Taal was either part of or followed students who forced their way into the hotel holding the career fair, contrary to orders

---

[1] https://www.cornellsun.com/article/2024/04/breaking-cornell-suspends-four-student-protestors (viewed March 22, 2025).  The Court may take judicial notice of facts "generally known within the territorial jurisdiction" or facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021).  Judicial notice of media reports is appropriate where the news media's reporting of events was not episodic but, rather, pervasive, and largely consistent with one another in their factual accounts of specific events.  *See Jeffery v. City of New York*, 113 F.4th 176, 179–80 (2d Cir. 2024).  For example, in a constitutional challenge to the City of New York's curfew imposed during the George Floyd protests, the court took judicial notice of media reports insofar as they detailed widely documented events or demonstrated the sort of information available to government officials at the time of the challenged action. *See id* (citing *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 61 (2d Cir. 2023)).  *See also Robar v. Vill. of Potsdam Bd. of Trustees*, 490 F. Supp. 3d 546, 564 and n. 7,8 (N.D.N.Y. 2020) (taking judicial notice of local articles and letters to the editor to establish that local community viewed plaintiff's art as an expression of political speech).

[2] *Id.*

[3] https://www.cornellsun.com/article/2024/10/student-assembly-member-among-pro-palestinian-activists-suspended-over-career-fair-disruption (viewed March 22, 2025)

from the police, and shut down the career fair through disruptive conduct.[4]  *See also* Declaration of John Armstrong ("Armstrong Decl.") ¶ 4.  The school informed Taal that he faced termination of his F-1.[5]  But after public outcry and a two-week appeal process, Cornell permitted Taal to continue his studies but banned him from campus until the end of the semester.[6]  In response to Taal's contention that his actions were "peaceful and in accordance with [his] First Amendment rights," the University explained that Taal infringed on the rights of other students who wanted to attend the career fair and created a security threat to other students.[7]  According to Provost John Siliciano, "it [is] critically important to note that there are thousands of students, staff and faculty who have equally strong and painful views on all sides of this crisis and yet manage their fear, anger and turmoil without interfering with the rights of others."[8]

The U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE) became aware of open-source records indicating that Taal had engaged in certain conduct, as described more fully than here in the attached declaration of Roy M. Stanley, including failing to comply with University directives leading to the University banning him from campus. Stanley Decl. ¶¶ 6-10.  On or around March 14, 2025, ICE transmitted written communication to the Department of State seeking the State Department's determination as to whether Taal, by

---

[4] *Id.*; *see also* https://www.cornellsun.com/article/2024/09/breaking-nearly-20-pro-palestinian-protesters-who-shut-down-career-fair-face-discipline-president-says (viewed March 22, 2025)
[5] https://www.cornellsun.com/article/2024/10/suspended-international-graduate-student-can-continue-studies-remotely-remains-barred-from-campus-interim-provost-decides (viewed March 22, 2025)
[6] *Id.*
[7] https://www.cornellsun.com/article/2024/10/suspended-international-graduate-student-can-continue-studies-remotely-remains-barred-from-campus-interim-provost-decides  (viewed March 22, 2025)
[8] *Id.*

participating in disruptive actions that created a hostile environment for Jewish students, had

taken actions calling into question his continued eligibility for a U.S. visa.  Armstrong Decl. ¶ 4.

Later that day the U.S. Department of State revoked Taal's F-1 student visa under INA

§ 221(i), 8 U.S.C. § 1201(i).  Armstrong Decl. ¶ 5 & 9.  State's declarant explains the basis for

revoking the visa:  State relied upon the underlying information and assessment provided by ICE

that Taal had been involved with disruptive protests and had engaged in an escalating pattern of

behavior, disregarding university policies and creating a hostile environment for Jewish students.

Armstrong Decl. ¶ 5.  This pattern of activity called into question Taal's ability to establish his

continued entitlement to nonimmigrant F-1 status, implicating State's discretionary authority to

determine whether to revoke the visa under INA § 221(i).  *Id.*

On March 14, 2025, the State Department notified ICE that it had revoked Taal's F-1

student visa.  Patrone Decl. ¶ 4.  The revocation of Taal's visa made Taal removable from the

United States pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA").

His authorization to be present in the United States has been revoked under Section 221(i) and he

lacks lawful immigration status.  Patrone Decl. ¶ 4.  Upon learning of the visa revocation and

Taal's lack of lawful immigration status on March 14, 2025, ICE began to look for Taal to serve

him with notice of these developments along with process to place him into removal

proceedings.  *Id.* ¶ 5.

Plaintiffs filed this lawsuit the following day.  ECF No. 1.  Taal contends that ICE is

trying to take him into custody in response to this lawsuit.  ECF No. 25 at 2.  But that gets things

backwards: Taal's immigration status became unlawful before this lawsuit began.  ICE's efforts

to place Taal into removal proceedings are a resul tof his changed immigration status, not this

lawsuit.  Patrone Decl. ¶¶ 4-5.  Yet it appears that this lawsuit is now essentially an effort to

prevent ICE from placing Taal into removal proceedings, which is the process Congress designed for assessing the issues raised in this case.

Between March 14, 2025, and the present, ICE attempted to serve Taal with a Form I-862 Notice to Appear in removal proceedings and take him into custody. *Id.* ¶¶ 4-5. To date, ICE's efforts to personally serve Taal with lawful process and notify him it considers him to be in unlawful status have not succeeded. *Id.* Therefore, as Taal noted, on March 21, 2025, undersigned counsel contacted counsel for Taal to share that ICE invites Taal and his counsel to appear in-person at the HSI Office in Syracuse at a mutually agreeable time for personal service of the NTA and for Taal to surrender to ICE custody, ECF No. 25-2, potentially mooting the second TRO motion.

## II.    The Executive Orders

The President signed Executive Order 14161, *Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats*, on January 20, 2025 ("EO 14161"). 90 Fed. Reg. 9451. The EO declares it "the policy of the United States to protect its citizens from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes." EO 14161, Sec. 1(a). It further declares the need to ensure that aliens "present in the United States do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles, and do not advocate for, aid or support designated foreign terrorists and other threats to our national security." EO 14161, Sec. 1(b). To this end, EO 14161 is primarily an internal-facing document, calling for executive departments and agencies to "identify resources" (Sec. 2(a)(i)), "determine information needed" (Sec. 2(a)(ii)), "submit . . . report[s]" (Sec. 2(b)(i)), "evaluate" existing policies, programs, and guidance (Sec. 3(a), (c), (f))), and

"recommend" actions (Sec. 3(g)).  To the extent that EO 14161 requires departments or agencies to take direct action in furtherance of its stated policy goals (*see, e.g.,* Sec. 2(b)(iii), 2(b)(iv), 3(a), 3(b), 3(e)), Section 4 makes plain that nothing in the EO shall impair or affect the legal authorities of executive departments or agency heads, and requires that the EO be implemented consistent with applicable law.  EO 14161, Sec. 4(a)(i)-(ii).

The President signed Executive Order 14188, *Additional Measures to Combat Anti-Semitism*, on January 29, 2025 ("EO 14188").  90 Fed. Reg. 8847.  The EO reaffirms the President's prior Executive Order 13899, signed on December 11, 2019, which stated it is Executive Branch policy to enforce Title VI of the Civil Rights Act of 1964 against anti-Semitism.  84 Fed. Reg. 68779.  EO 14188 echoes that policy pronouncement and adds that Executive Branch policy is also to use "all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence."  EO 14188, Sec. 2.  As with EO 14161, this EO consists mainly of internal directives to departmental and agency heads to advance the EO's policy aims.  EO 14188, Sec. 3(a)-(b), (d)-(e).  It also "encourage[s]" the Attorney General "to employ appropriate civil-rights enforcement authorities . . . to combat anti-Semitism," EO 14188, Sec. 3(b), and demands that implementation of the EO be "consistent with applicable law."  EO 14188, Sec. 4(b).

### III.    Response to Court's March 21, 2025 Order

With respect to the Court's March 21, 2025 order, which directed Defendants to:  (1) respond to Plaintiffs' March 21, 2025 Letter Brief (ECF No. 25) in this response; and (2) address "whether the portions of the Executive Orders challenged in the Complaint, Dkt. No. 1, are a basis for Mr. Taal's anticipated 'surrender to [U.S. Immigration and Customs Enforcement] custody' as stated in the March 21, 2025 electronic mail message from the Government to

Plaintiffs' counsel." ECF No. 27. Defendants have endeavored to respond above to the letter brief's factual concerns, and respond to its legal arguments below. Defendants' counsel also appreciate the Court acting swiftly on their applications for admissions to enable them to notice their appearance.

Defendants now address the Court's question about the extent, if any, to which the portions of the Executive Orders challenged in the Complaint are a basis for ICE's request— communicated through undersigned counsel to Taal's counsel, as ICE has not been able to find Taal—that Taal appear with counsel for service of the Notice to Appear in removal proceedings and surrender to ICE custody. ECF No. 27. While a very short amount of time was available to confer with the U.S. Department of Homeland Security and U.S. Department of State before this response to the TRO motions was due, undersigned counsel were able to obtain the agencies' answers to that question, which is explained in the attached declarations of Anthony Patrone, Stuart Wilson, and Roy Stanley. Those give a more complete answer to that question, and here is a summary.

To implement Executive Order 14188, *Additional Measures to Combat Anti-Semitism,* ICE reviews news sources to identify individuals subject to the executive order and identified Taal as having engaged in certain disruptive conduct as noted in Defendants' declarations and therefore contacted the State department as described above. Stanley Decl. ¶¶ 7, 9. The State Department then made a discretionary determination to revoke Taal's nonimmigrant visa under 8 U.S.C. § 1201(i). Armstrong Decl. ¶ 5. And thereafter, because Taal lacked lawful status, ICE sought to serve him with a Notice to Appear in removal proceedings, but has not been able to locate him. Patrone Decl. ¶ 5.

Other than as summarized above and detailed in the attached declarations, it is the understanding of undersigned counsel—based on information counsel has been able to obtain so far on a very limited timeframe available to respond to the TRO motions—that ICE's efforts to place Taal into removal proceedings and take him into custody are not otherwise based on the portions of the Executive Orders being challenged in the Complaint. If undersigned counsel obtains further information on this matter between this filing and the hearing on Tuesday, they will promptly provide that additional information.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 65 governs these proceedings, and the standard for issuance of temporary restraining orders and preliminary injunctions is the same.  *See Antonyuk v. Hochul*, 635 F. Supp. 3d 111, 124-25 (N.D.N.Y. 2022); *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir. 1962).  The injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. NRDC*, 555 U.S. 7, 22 (2008), and the burden is squarely on Plaintiffs.  *See Moore v. Consolidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). In addition to Plaintiffs' burdens to show likelihood of success on the merits, Plaintiffs must also show likelihood of irreparable harm, that equity balances in their favor, and that an injunction is also in the *public* interest. S*ee N.Y. Progress and Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).  When the Government is a party to the suit, the balance of equities factor merges with the inquiry into the public interest.  *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020).

A showing of "actual and imminent" irreparable harm is the single most important element for Plaintiffs to establish. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005), *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). But when a plaintiff seeks to *change* the status quo, the burden is even hearvier; Plaintiffs "must demonstrate a 'substantial' likelihood of success on the merits." *N.Y. Progress*, 733 F.3d at 486 (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

## II.    The Court Lacks Jurisdiction Over Plaintiffs' Claims

### A.  The Claims Are Not Ripe

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967). That is precisely the case with the complaint; Plaintiffs cannot show tangible harm, much less tangible harm that is irreparable. The EOs are at bottom policy directives to federal agencies to take *preparatory* steps in anticipation of *possible* executive action (*e.g.*, prepare reports, examine authorities, and implement policy under applicable law). The Plaintiffs base their entire case on rather obvious misreadings of the EOs. The EOs do not outlaw certain speech, for instance. As relevant here, the EOs target "harassment and violence"—*i.e.*, illegal conduct. EO 14188 at § 2 (Policy). So the claims here are *especially* unripe: They are not only premature, but they rest on plainly incorrect interpretations of the EOs. Moreover, Plaintiffs ignore that both EOs expressly condition that their policies "shall be implemented consistent with applicable law." EO 14188 at §§ 3(e), 4(b); EO 14161 at § 4(b). An order to agencies to implement policy objectives "consistent with applicable law" is simply not illegal. And a preemptive challenge to what *might* hypothetically follow that directive is quintessentially premature. *See, e.g., Nat'l Park*

9

*Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003); *Construction Trades Dept., AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).  Plaintiffs' unripe demand fails. *See Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time.").

### B.  The Plaintiffs Lack Standing

Plaintiffs allege that their free speech is being chilled or silenced (or that they cannot hear the speech of others), because they fear some future enforcement action (either deportation or criminal arrest).[9]  None of that is redressable, however, by their sought-after relief.  The EOs task agencies with exploring how to solve a problem; neither vests any agency with enforcement authority it previously did not have.  Put otherwise, all of the agencies here can take all of the same enforcement actions based on preexisting authority, regardless of what happens in this case.  That defeats standing.  *See Laird v. Tatum*, 408 U.S. 1, 11, 13 (1972) (holding to have standing a plaintiff "must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action").

---

[9] Plaintiffs' "right to hear" confers no standing.  Essentially, it proves too much: allowing everyone in the country to add a derivative lawsuit for every First Amendment challenge.  That sort of generalized harm is not justiciable.  *See Already, LLC v. Nike, Inc*., 568 U.S. 85, 99 (2013) (Supreme Court has "never accepted [] a boundless theory of standing"); *cf. Murthy v. Missouri*, 603 U.S. 43, 75 (2024) (rejecting "claim[ed] an interest in reading and engaging" with others on social media, because the "theory is startlingly broad, as it would grant all social-media users the right to sue over someone else's censorship—at least so long as they claim an interest in that person's speech").

Perhaps the best indicator of that is Plaintiff Taal's own story (as detailed in his complaint). He was twice suspended at Cornell for harassment, and antisemitic conduct. Those episodes jeopardized his immigration status more than a year ago, well before any EO issued. And they remain relevant to his immigration status now, under preexisting law. What Plaintiffs are seeking—on their own behalf, or in their role as listeners—is an enjoining preemptively preventing the enforcement of federal immigration or criminal laws based on what they contend is their "speech." But such a prophylactic TRO or injunction is speculative and thus improper. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013) (concerns of future law enforcement action speculative when rooted in policy that fails to "regulate, constrain, or compel" lawful activity); *Louisiana v. Biden*, 64 F.4th 674, 681 (5th Cir. 2023); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020); *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158-59 (2014) (pre-enforcement review warranted only "under circumstances that render the threatened enforcement sufficiently imminent."). All the more so in the immigration context. *Cf. Reno v. Am.-Arab Anti-Discrimination Comm.* ("AADC"), 525 U.S. 471, 488 (1999). Indeed, the claims here are directly contrary to the Supreme Court's holding in *AADC*, which rejected the argument that removal proceedings could be halted because otherwise, review in those proceedings came "too late to prevent the 'chilling effect' upon their First Amendment rights." *Id*.

In short, "subjective or speculative accounts of … a chilling effect … are not sufficient." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011).

### C.  Article II Bars This Action.

Plaintiffs' request relief would violate Article II, and the separation of powers. Specifically, the identified provisions: (1) State a general "policy" of the Executive Branch (EO 14161 at § 1(b)); (2) Identify resources and required information, related to that policy (*id.* at §

11

2(a)(i), (ii)); (3) Establish procedures for vetting and screening, consistent with all applicable law, to ensure aliens are not threats to national security (*id.* at § 2(a)(iv)); (4) Include certain recommendations in a report to the Executive Branch (EO 14188 at § 3(e)); and (5) State a general "policy" to combat antisemitic harassment and violence (*id*. at § 2).  The Plaintiffs also ask the Court to categorically enjoin both EOs (including their report provisions, etc.) "as applied to non-citizens" (although it is unclear what precisely that means).

These internal directives contained in the EOs—the President tasking subordinates to prepare reports, explore resources, establish procedures, and prioritize resources—are the sole prerogative of the President, and his responsibility to supervise the Executive Branch.  *See Ass'n of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993); OLC, *Proposed Executive Order Entitled "Federal Regulation,"* 5 Op. O.L.C. 59, 60 (1981) (The President has the authority "as head of the Executive Branch to 'supervise and guide' executive officers in 'their construction of the statutes under which they act.'") (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926)).

Further, the President cannot be enjoined nor subjected to review under the APA.  *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992); *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991).

Of course, this is not to say that executive actions *implementing* executive orders are unreviewable.  But the federal courts cannot broadly pretermit that process, preventing executive agencies from even exploring internally a policy directive from the President.  *See State of Mississippi v. Johnson*, 71 U.S. 475, 501 (1866) ("But we are fully satisfied that this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties[.]").

### D.  The INA Bars District Court Review

This Court lacks subject matter jurisdiction over Taal's First and Fifth Amendment challenges to the EOs, because it is well-established that aliens may not circumvent Congress's bar on review of discretionary immigration enforcement or channeling of available review to immigration proceedings.  Taal claims the EOs may subject him to an arrest by immigration officials or the police based on his prominent anti-Israel views and protected speech.  *See* ECF. No. 2-2 at 2-3 (Affidavit of Momodou Taal).  But Taal is an alien previously admitted on an F-1 Student visa which has been revoked.  A<u>ny</u> claim he may wish to raise regarding that revocation must be asserted through the exclusive procedures set out by Congress in the INA, including judicial review of any legal or constitutional claim – not in district court.  *See Reno v.* AADC, 525 U.S. 471, 487 (1999)); *see generally* 8 U.S.C. § 1252.  Moreover, any claim that Taal's impending placement in removal proceedings is a violation of his First Amendment rights is precluded by 8 U.S.C. § 1252(g) and directly contrary to the Supreme Court's *AADC* decision.  *Id.* at 487-92.  In other words, the INA does not permit Taal to prioritize his constitutional claims over Congress's removal scheme—transforming this Article III court into an administrative removal case.  Congress precluded such piecemeal litigation, *see AADC*, 525 U.S. at 487 (the INA's judicial review scheme, including section 1252(g), bars the "deconstruction, fragmentation, and [] prolongation of removal proceedings"), but also provides a forum in which constitutional claims *will* be heard in due course.  *See id.* at 487-88 (holding the doctrine of constitutional doubt does not require pre-enforcement review of removal proceedings even when there is a claim of First Amendment chilling effect).  In short, Taal's challenges concerning the revocation of his student visa are not properly before this Court.  *Id.; cf. Dep't of State v. Munoz*, 602 U.S. 899, 907-08 (2024) (reaffirming that the admission and exclusion of

foreign nationals, including visa denials, is a fundamental sovereign attribute "largely immune from judicial control") (cleaned up).

Additionally, 8 U.S.C. § 1201(i) provides that after the issuance of a visa, a "consular officer or the Secretary of State may *at any time*, in his discretion, revoke such visa or other documentation," and commands "[t]here shall be no means of judicial review [such as habeas corpus review] of a revocation under this subsection, *except in the context of a removal proceeding* if such revocation provides the sole ground for removal."  8 U.S.C. § 1201(i) (emphasis added).  So, review of that denial may only happen in removal proceedings once instituted by DHS, which will provide him with the process and procedure Congress said he is due.[10]  Moreover, given Taal's immigration status, any review of the Executive Orders would not redress this asserted injury – he is subject to the commencement of removal proceedings with or without those Orders.

Nor is the Court's lack of jurisdiction restored by the Plaintiffs' objection to Taal's possible removal framed as a First and Fifth Amendment challenge to the EOs.  Instead, the INA provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, "arising from any action" to remove an alien are "available only in judicial review of a final order [of removal]."  8 U.S.C. § 1252(b)(9).  By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."  8 U.S.C. §§ 1252(a)(5), (b)(2).  That includes challenges inextricably intertwined with the final order of

---

[10] And because removal proceedings are the predicate for such challenges, the injunction requests are, as noted above, unripe.

removal that precede issuance of any order of removal, *see Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)., and decisions to detain for purposes of removal. *See Jennings,* 138 S. Ct. at 841 (1252(b)(9) includes challenges to "decision to detain [alien] in the first place or to seek removal," which precedes any issuance of an NTA); *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (the REAL ID Act clarified that removal orders may not be reviewed in district courts, "even via habeas corpus," and may be reviewed only in the courts of appeals.). Indeed, in *Delgado v. Quarantillo*, the Second Circuit held that the REAL ID Act divests district courts of jurisdiction to review both direct and indirect challenges to removal orders. 643 F.3d 52, 55 (2d Cir. 2011); *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009). Indeed, this provision circumscribes district court jurisdiction over "*any* issue—whether legal or factual—arising from any *removal-related activity* [which] can be reviewed only through the [administrative] process." *J.E.F.M. v. Lynch*, 837 F.3d at 1026, 1029-30 That includes "policies-and-practices challenges," *J.E.F.M.*, 837 F.3d. at 1032, arising from any "action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), whether or not the challenge is to an actual final order of removal or whether there even is a final order at all. *J.E.F.M.*, 837 F.3d at 1032. Were it otherwise, the statute's reference to "actions taken" before removal proceedings are initiated, would be "superfluous and effectively excised" it from the statute. *Aguilar*, 510 F.3d at 10. Thus, any constitutional challenge to actions taken to remove Plaintiffs can only be raised through the immigration courts and in the court of appeals following a petition for review.[11]

---

[11] To the extent Plaintiffs suggest constitutional claims cannot be raised in removal proceedings, that is imply incorrect. Aliens may challenge the basis of their immigration arrests through a motion to terminate their proceedings at their first immigration- court appearance based on the alleged unlawful arrest, including where the arrest has already occurred. *See, e.g., Sanchez v. Sessions*, 904 F.3d 643, 649 (9th Cir. 2018). That then preserves the issue for review in an appropriate court of appeals.

Finally, Congress expressly prohibited district court review of decisions to commence removal proceedings. 8 U.S.C. § 1252(g); *id.* § 1252(b)(9); *Elgharib v. Napolitano*, 600 F.3d 597, 602–04 (6th Cir. 2010) ("a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute). Under section 1252(g) the courts lack jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g); *see AADC*, 525 U.S. at 487; *see also Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review."); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002); see *also Sissoko v. Rocha*, 509 F.3d 947, 950-51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false-arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment retaliation claim based on the Attorney General's decision to put him into exclusion proceedings).

Taal's assertion that any removal proceeding against him amounts to unlawful targeting based on constitutionally protected activity is foreclosed by the statutory scheme and the Supreme Court's decision in *AADC,* where the Court rejected the argument that the unavailability of habeas relief or a viable petition for review to challenge constitutional concerns calls into doubt the constitutionality of § 1252(g). The Supreme Court concluded that "the

doctrine of constitutional doubt [does not have] any application" because "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." 585 U.S. at 487-88. While the aliens in *AADC* claimed that a lack of immediate review of their constitutional challenges would have a "chilling effect" on their First Amendment rights, *id.* at 488, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)" and does not violate their constitutional rights. *Id.* at 487; *Zuniga-Perez v. Sessions*, 897 F.3d 114, 122 (2d Cir. 2018); *Singh v. Mukasey*, 553 F.3d 207, 212-13 (2d Cir. 2009) (Fifth Amendment applies to noncitizens in removal proceedings). In short, Taal's premature challenge and attempted delay or fragmentation of the claims that Congress requires to be raised in removal proceedings lack jurisdiction here.

### E. The Court Lacks Jurisdiction to Review the U.S. Citizen-Plaintiffs' Challenge to Implementation of Removal Proceedings.

Even if the EOs could be traced to some injury for Taal, "private citizens" like the plaintiffs in this case "lack[] a judicially cognizable interest in the prosecution . . . of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). An individual who does not face prosecution "lacks standing to contest the policies of the prosecuting authority." *Id*. An individual similarly has "no judicially cognizable interest in procuring" or preventing "enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984). Thus, plaintiff citizens cannot contest any immigration-related actions pertaining to Taal.

This is further supported by the INA itself, which provides administrative and judicial review at the behest of noncitizens, *see* 8 U.S.C. § 1252(a)(5), (b)(9), (e)(3), but its comprehensive scheme provides no role for third parties like the citizen plaintiffs to play in that

process.  The omission of any such right to review is itself sufficient to conclude that Congress intended to preclude plaintiffs from challenging Taal's immigration enforcement through injunctive relief.  The conclusion conforms to the principle, discussed above, that a person does not have Article III standing to challenge the government's enforcement decisions affecting third parties.  The relevant point is that citizens have no cognizable interest in avoiding attenuated costs that flow from immigration enforcement decisions relating to a third-party noncitizen.

The INA imposes careful limitations on the mechanisms for that review.  For example, as explained above, a noncitizen may obtain judicial review only of questions arising out of removal proceedings through a challenge to a final removal order, following exhaustion of administrative remedies.  *See* 8 U.S.C. § 1252(b)(9); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020) (explaining that "Congress intended th[is] zipper clause to consolidate judicial review of immigration proceedings into one action" (quotation omitted)).  Moreover, section 1252(g) explicitly forbids claims not just by aliens, but "on behalf of any alien," which further demonstrates the lack of any cause of action for third parties to challenge proceedings on behalf of specific aliens.  Permitting the plaintiff citizens to challenge any immigration enforcement regarding Taal through a district court action seeking a preliminary injunction would "severely disrupt" the INA's "complex and delicate administrative scheme," including by providing Taal "a convenient device for evading the statutory" restrictions on review.  *Block v. Community Nutrition Institute*, 467 U.S. 340, 348 (1984).  It is thus "clear that Congress intended that judicial review" of any immigration action "ordinarily be confined to suits brought by" noncitizens "in accordance with" the INA's scheme.  *Id*.

### F.  Plaintiffs' Injunction Request Is Overbroad And Unconstitutional

If nothing else, this Court should reject Plaintiffs' request to issue a sweeping universal injunction premised on speculative and unsupported claims that the EOs violate their First Amendment rights.  This holds particularly true where Congress has already provided a statutory process, outside of the district courts, by which to challenge the government's discretionary immigration enforcement actions (i.e., removal proceedings).  *See supra* at 8. Article III does not empower federal courts to "exercise general legal oversight of the Legislative and Executive Branches," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021), much less empower them to assume a position of authority over the governmental acts of another coequal department, "an authority which plainly [courts] do not possess." *Massachusetts v. Mellon*, 262 U.S. 447, 489 (1923).

Moreover, a universal injunction issued by the district court would flout limitations on Article III courts arising both from the Constitution and principles in equity. Relief must be narrowly tailored to the parties before the court, and must be "limited to the inadequacy that produced [plaintiffs'] injury in fact," *Gill v. Whitford*, 585 U.S. 48, 66 (2018), particularly where plaintiffs utterly fail to show that "complete relief" could not be provided by a narrower injunction limited to any bona fide, identified clients subjected to the challenged actions. *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018).  An injunction that precluded applying the challenged provisions of the EO with respect to the specific named plaintiffs would satisfy any possible injury alleged in this suit.

III.    **Plaintiffs' Constitutional Claims Fail**

   A.  **Plaintiffs' First Amendment Claims Are Meritless**

Plaintiffs mount a facial challenge to both Executive Orders because they seek to categorically bar their application, or at least certain of their provisions — and seek to do so nationwide.  The Government addresses below the two facial constitutional challenges to the EOs.  But the sort of fact-intensive analysis that goes into a removal proceeding is not only something that cannot be done in an expedited TRO posture but also is not something for this Court's jurisdiction.

Even in the First Amendment context, Plaintiffs bear a heavy burden.  *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *United States v. Hansen*, 599 U.S. 762, 770 (2023).  To succeed on their claim, Plaintiffs must show that "a substantial number" of each EO's applications "are unconstitutional, judged in relation to [their] plainly legitimate sweep."  *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (quotation omitted).  Furthermore, facial invalidation is only justified if a law's unconstitutional applications are "realistic," and not "fanciful."  *Hansen*, 599 U.S. 762, 770.  In the immigration context, review of constitutional claims relating to removal or entry of aliens are at most considered under a very deferential review standard.  *See Department of State v. Munoz*, 602 U.S. 899, 908 (2024) (when constitutional rights of a U.S. citizen are burdened, if there is a "facially legitimate and bona fide reason" for the action, the court's "inquiry is at an end").  Plaintiffs can make no such showing.

All of Plaintiffs' First Amendment claims rest on the same basic premise:  their rights to speak, associate, and listen are being chilled due to their concern about allegedly unlawful application of the EOs.  Mot. at 12-18.  But their premise is wrong.  The EO provisions have

scores of obvious, lawful applications.  And most of the acts are fundamentally internal — such as the evaluation of current policies and the preparation of reports.  *See, e.g.*, EO 14161 sec. 2(a)(i)-(ii), (b), 3(a)-(g); EO 14188 sec. 3.  Even looking past that, the EOs are targeted at either (i) those who aid or support designated terrorist groups (EO 14161 sec. 1(b)), or (ii) those who engage in "*unlawful* anti-Semitic harassment and violence" (EO 14188, sec. 2 (emphasis added)).  That is *completely lawful*.  Plaintiffs do not grapple with this at all in seeking to strike the EOs down in full.  *See generally* Mot. 12-18.

Contrary to Plaintiffs' assertions, the EOs do not impose "restrictions" on any speech.  *Contra* Mot. 12-13, 15-18.  Rather, they are purely directives to executive agencies.  *See* EO 14161 sec. 2(a)-(c), 3(a)-(g); EO 14188 sec. 3(a)-(e).   And even were the Court to accept Plaintiffs' concern that the EOs will lead to two broad categories of unlawful enforcement actions, neither helps their case.  First, nothing in the EOs permits or requires Taal to be deported because of a protected ground.  Mot. at 8-9.  Again, by their terms, the EOs are focused on *conduct* (just as Cornell University was focused on conduct when it expelled Taal from its campus).

Additionally, Taal's argument is also overstated as in this context, the First Amendment does not always apply to a citizen the same way as to an action to exclude an alien from the United States.  *See Kleindienst v. Mandel*, 408 U.S. 753, 766–770 (1972); *Shaughnessy*, 345 U.S. at 212 (First Amendment does not protect aliens from deportation because of membership in the Communist Party); *Bluman*, 800 F. Supp. 2d at 287.  Furthermore, even if some enforcement action is unlawfully taken in the future, the proper course is to address that action on those terms; but facial relief enjoining legitimate EOs preemptively is improper.

Second, the U.S. citizen-Plaintiffs, Mūkoma Wa Ngũgĩ ("Wa Ngũgĩ") and Sriram Parasurama ("Parasurama"), assert that the EOs "criminalize speech." Mot. 15. But they cite nothing from the EOs to support this. And that is because the EOs simply do not do this. EO 14188, which is the focus of these claims, targets "*unlawful* harassment and violence." *See* EO 14188 sec. 2 (emphasis added). That is not protected speech, because only unprotected speech and conduct can be *unlawful*. Finally, the visa revocation and impending removal charge provide facially legitimate justifications for initiation of removal proceedings; and those facially valid justifications are preclusive on this posture. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).

### B. The EOs Are Neither Unconstitutionally Vague nor Overbroad

Plaintiffs attempt to impute and nullify presidential EOs as unconstitutionally vague and overly broad. Mot. 19-21. However, the EOs are not subject to vagueness standards. The EOs are instead presidential directives to government officials to guide their work, meaning, it is for them to make concrete. Plaintiffs have failed to cite to a single case where a court declared an EO or similar guidance void for vagueness. The Supreme Court has not extended the void for vagueness doctrine to a context beyond statutory provisions. For example, the court in *Beckles v. United States* refused to apply the void for vagueness doctrine to the sentencing guidelines. 580 U.S. 256, 263 (2017). Here, Plaintiffs are not challenging a statute or rule that applies to them. Instead, their dispute is with an EO that is directed at other executive branch officials. *See* EO 14161 (directing Secretary of State, Attorney General, and Secretary of Homeland Security to take action consistent with EO); EO 14188 (directing agency heads to take certain action consistent with EO). These EOs express broad policy objectives by the President, directing each agency to execute subject to applicable laws. EO 14161 § 4(b) ("This order shall

22

be implemented consistent with applicable law"); EO 14188 § 4(b) (same). At no point are these EOs imposing obligations — criminal or otherwise — on individuals. The EOs are not subject to the void for vagueness doctrine.

But even assuming the EOs impose obligations on Plaintiffs, they are sufficiently specific to defeat any vagueness argument. For example, EO 14161 states that, as a matter of policy, it seeks to ensure that noncitizens in the United States "do not bear hostile attitudes" towards the nation or its citizens, and "do not advocate for, aid, or support designated foreign terrorists and other threats" to national security. EO 14161 § 1(b). The EO does not purport to expand the inadmissibility grounds, so this statement is consistent with the INA and is indeed similar to several of those grounds of inadmissibility. So, the EO, even if directly applicable to individuals is consistent with law, as section 4(b) makes clear, it is to "be implemented consistent with applicable law." To the extend an agency improperly implements the EO, then review can be had in the courts.

## C. Strict Scrutiny Review Is Inapplicable Here

Plaintiffs suggest that the EOs should be subject to strict scrutiny. Mot. 18-19. But this is wrong at every turn. Plaintiffs cite no example of any EO being subject to strict scrutiny, and for good reason: It puts the cart entirely before the horse. Strict scrutiny is a tool for evaluating certain concrete governmental actions. It is not designed for pre-enforcement review of EOs, which provide internal guidance to the Executive Branch. Presidential proclamations and orders may have the force and effect of law in certain circumstances. *See Gnotta v. United States*, 415 F.2d 1271, 1275 (8th Cir. 1969); *Farkas v. Texas Instrument, Inc.*, 375 F.2d 629, 632 n.1 (5th Cir. 1967); *Farmer v. Philadelphia Electric Co.*, 329 F.2d 3, 7 (3d Cir. 1964). But that is not the case when the President provides pre-decisional directives to agencies in the form of EOs, and

especially not when the President does so through EOs like the ones at issue in this case —

charging agencies with developing policies, building a record, and recommending agencies

lawful use of authorities.  Because the EOs have not created any new laws and have not placed

any restriction on Plaintiffs' speech, heightened scrutiny cannot apply even if judicial review of

the EOs were proper (and it is not).

### IV.    Plaintiffs Will Not Be Irreparably Harmed Absent An Injunction Against The EOs

The irreparable harm requirement for obtaining an injunction is the single most important

prerequisite and must be satisfied before the other requirements are considered.  *See St. Joseph's*

*Hospital Health Center v. American Anesthesiology of Syracuse, P.C.*, __ F.4th __ , 2025 WL

794367 (2d Cir. 2024).  Plaintiffs fail at this step.  "To establish irreparable harm, the moving

party must show an 'injury that is neither remote nor speculative, but actual and imminent . . . .'"

*Id.* (quoting *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

"Irreparable harm exists where, but for the grant of equitable relief, there is substantial chance

that upon final resolution of the action the parties cannot be returned to the positions they

previously occupied."  *Antonyuk v. Hochul*, 635 F.Supp.3d 111, 126 (N.D.N.Y. 2022) (internal

quotations omitted).

Plaintiffs allege that the EOs "chill" their First Amendment speech and association rights.

ECF No. 2-5 at 8-11.  They argue that this alone constitutes irreparable harm because

"[v]iolations of First Amendment rights are commonly considered irreparable injuries for the

purposes of preliminary injunctions."  *Id.* at 1.  However, as discussed, Plaintiffs' premise that

the EOs impinge their First Amendment rights to speak, hear, and associate, such that irreparable

harm is a foregone conclusion, is at best, speculative.

The challenged provisions of the EOs do not, as Plaintiffs imply, "criminalize speech." *See* ECF No. 2-5 at 15. To the contrary, the EOs do not impose any restrictions on speech. Section 1(b) of EO 14161 outlines a policy of the United States to "protect Americans" by "ensuring that . . . aliens approved for admission into the United States do not intend to harm Americans or our national interests." Section 2 of EO 14188 outlines a policy of the United States to "combat anti-Semitism" by prosecuting, removing, and otherwise holding accountable perpetrators of "unlawful" conduct, specifically "anti-Semitic harassment and violence." Sections (2)(a)(i), (ii), and (iv) of EO 14161 are directives to federal agencies to identify necessary vetting and screening resources, determine information sharing needs, and vet and screen admitted aliens and those seeking admission. Section 3(e) of EO 14188 is a directive to federal agencies to include recommendations related to investigations and removal actions in reports to the President. The EO's policy statements and directives to federal agencies do not unlawfully infringe upon Plaintiffs' First Amendment speech and association rights, such that Plaintiffs have established any present harm or a possibility of irreparable harm. *Cf. Antonyuk*, 635 F.Supp.3d at 126 (explaining that irreparable harm exists where, absent an injunction, the parties cannot be returned to the positions they previously occupied).

To the extent that Plaintiffs fear that the EOs allow removals and prosecutions based on speech and association, and have consequently limited their own speech and association, their fears are unfounded based on the EOs content, as well as speculative and remote. Section 4(b) of each EO provides that it "shall be implemented consistent with applicable law." Section 3(e) of EO 14188 also specifies that removal actions must be "consistent with applicable law," with applicable law necessarily including the First Amendment. Accordingly, Plaintiffs fail to establish that they have been or will imminently be irreparably harmed as a result of the EOs

targeting protected speech. *See St. Joseph's Hospital*, __ F.4th __, 2025 WL 794367 (*quoting New York*, 969 F.3d 42 at 86) ("[t]o establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent'"). This alone defeats their claim to injunctive relief.

## V.    Plaintiffs Are Not Entitled To Relief

Plaintiffs ask the Court to enjoin the EOs. ECF No. 2-5 at 24. Doing so would violate Article II and separation of powers principles. As discussed *supra*, the challenged provisions of the EOs state general "policies" of the Executive Branch and direct the President's subordinates to explore and prioritize resources, establish procedures, and prepare reports. Making such policy statements and issuing such internal directives are the sole prerogative of the President and inherent to his responsibility to supervise the Executive Branch. *See Ass'n of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993); OLC, *Proposed Executive Order Entitled "Federal Regulation,"* 5 Op. O.L.C. 59, 60 (1981) (The President has the authority "as head of the Executive Branch to 'supervise and guide' executive officers in 'their construction of the statutes under which they act.'") (quoting *Myers v. United States*, 272 U.S. 52, 135 (1926)). A nationwide injunction against the EOs impermissibly interferes with these Executive functions.

The appropriate forum to raise constitutional challenges to the removal process is in the context of removal proceedings, or in an as-applied challenge. *See* 8 U.S.C. §§ 1252(b)(9), 1252(g); *AADC*, 525 U.S. at 485 (indicating that § 1252(b)(9) channels judicial review of all "decisions and actions leading up to or consequent upon final orders of deportation," including "non-final orders," into one proceeding exclusively before a court of appeals); *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 189 (2d Cir. 2022) ("§ 1252(b)(9) establishes that questions arising

from actions taken or proceedings brought to remove an alien may be reviewed together with the final order of removal") (internal citations and quotations omitted).

Plaintiffs' motion also does not meaningfully address the fact that the EOs, which delineate policies of protecting national security, combatting anti-Semitism, and targeting violence and harassment, have scores of important and incontestable lawful applications. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("Everyone agrees that the Government's interest in combating terrorism is an urgent objective of the highest order."); *Cf.* ECF No. 2-5 at 15 (acknowledging that EO 14188 may "possess a nexus to the government's interest in enforcing anti-discrimination laws"). Ultimately, the EOs have lawful, important, and necessary aims and involve authority granted to the President by Article II. Accordingly, the public interest does not lie in the EOs injunction. The Court should deny Plaintiffs' motion for a temporary restraining order.

Finally, the Court should order security with any preliminary injunction. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' requests for a preliminary injunction and temporary restraining order.

March 22, 2025                                       Respectfully Submitted,

                                                    YAAKOV M. ROTH
                                                    Acting Assistant Attorney General

                                                    DREW C. ENSIGN
                                                    Deputy Assistant Attorney General

                                                    AUGUST E. FLENTJE
                                                    Acting Director

                                                    EREZ REUVENI
                                                    Acting Deputy Director

                                                    /s/ *Ethan Kanter*
                                                    ETHAN KANTER
                                                    Chief, National Security Unit
                                                    Office of Immigration Litigation
                                                    P.O. Box 878, Ben Franklin Station
                                                    Washington, DC 20001

                                                    PAUL STONE
                                                    Deputy Chief, National Security Unit

                                                    BENJAMIN MARK MOSS
                                                    Senior Litigation Counsel

                                                    JOHN A. SARCONE III
                                                    United States Attorney

                                                    KAREN FOLSTER LESPERANCE
                                                    Chief, Civil Division
                                                    Office of the United States Attorney
                                                    Northern District of New York

                                                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2025, I electronically filed this response with the Clerk of the Court for the United States District Court for the Northern District of New York by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: _/s/ Karen Folster Lesperance_
　　KAREN FOLSTER LESPERANCE