UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOMODOU TAAL, MŨKOMA WA NGŨGĨ, and SRIRAM PARASURAMA,<br><br>              Plaintiffs,<br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; and KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security;<br><br>              Defendants. | Case No. 3:25-cv-000335-ECC-ML |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

i

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................... 1
**ADDITIONAL BACKGROUND** ................................................................................................ 1
**ARGUMENT** ................................................................................................................................. 2

    **I.**    **This Court Has Jurisdiction** ........................................................................................... 2

        A. *The Immigration and Nationality Act Does Not Strip Jurisdiction Over Outrageous Government Actions Like Those Here* ......................................................................... 2
        B. *Article II Does Not Override Article III* ........................................................................ 5
        C. *The Requirements of Article III Standing Are Satisfied* ................................................ 5

    **II.**   **A Nationwide Injunction Is Appropriate** .................................................................... 6

        A. *Plaintiffs' Constitutional Claims Are Substantially Likely to Succeed* ........................... 6

            1. Attending a Protest in the U.S. Is Not a Valid Basis for Removing a Non-Citizen ... 6
            2. Defendants Are Wrong on the Merits of the First Amendment Claims ..................... 8
            3. The Orders Are Reviewable for Overbreadth and Vagueness .................................... 9

        B. *Plaintiffs Have Been and Will Continue to Be Irreparably Harmed by the Orders* .......... 9
        C. *A National Injunction Is Appropriate and In the Public Interest* ................................... 10

**CONCLUSION** ............................................................................................................................ 11
**CERTIFICATE OF SERVICE** .................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ................................................... 9

*Bridges v. Wixon*, 326 U.S. 135 (1945) ......................................................................................... 6

*Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ......................................... 5

*Dep't of State v. Muñoz*, 602 U.S. 899 (2024) ............................................................................... 7

*DHS v. Thuraissigiam*, 591 U.S. 103 (2020) ................................................................................. 7

*F.C.C. v. Fox T.V. Stations, Inc.*, 567 U.S. 239 (2012) .................................................................. 9

*Johnson v. Eisentragger,* 339 U.S. 763 (1950) .............................................................................. 7

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) .................................................................................. 7

*Open Soc'y Justice Initiative v. Trump*, 510 F. Supp. 3d 198 (S.D.N.Y. Jan. 4, 2021) .............. 5, 6

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) ........................................................................... 3, 4

*Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) .............................. 2, 3

*Santa Cruz Lesbian & Gay Comty. Ctr. v. Trump*, 508 F. Supp. 3d. 521 (N.D. Cal. Dec. 22, 2020) ........................................................................................................................................ 9

*Shaughnessey v. U.S. ex rel. Mezei*, 345 U.S. 206 (1953) ............................................................. 7

*Snyder v. Phelps*, 562 U.S. 443 (2011) .......................................................................................... 6

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971) ......................................................................... 5

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .............................................................. 6

*Trump v. Hawaii*, 585 U.S. 667 (2018) .......................................................................................... 5

*U.S. v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ....................................................................... 6, 7

*Western Union Tel. Co. v. Foster*, 247 U.S. 105 (1918) ............................................................... 6

**Statutes**

8 U.S.C. §1227(a)(1)(B) ................................................................................................................. 1

8 U.S.C. 1252(g) ............................................................................................................................ 2

**Regulations**

8 C.F.R. § 214.1(e)-(f) ................................................................................................................. 2

9 F.A.M. 403.11 .......................................................................................................................... 2

## INTRODUCTION

Defendants acknowledge they are attempting to remove Momodou Taal ("Mr. Taal") from the United States because he is a pro-Palestinian activist who attended a protest at Cornell University in August 2024. Their alleged authority for doing so is the Executive Orders. The Court should grant Plaintiffs' motions for Temporary Restraining Orders.

## ADDITIONAL BACKGROUND

On Wednesday, March 19 – four days after Plaintiffs initiated this lawsuit – Defendant DHS visited Mr. Taal's place of residence in what Defendants acknowledge was an attempt to detain him. ECF No. 30-1 ¶ 5. That afternoon, Plaintiffs filed an emergency motion for a TRO and request for an Order to Show Cause asking the Court to enjoin Defendants from attempting to detain or remove Mr. Taal pending the adjudication of the initial TRO motion. ECF No. 25. At 12:52 A.M. on Friday, March 21, Defendants asked Mr. Taal to surrender to ICE custody and accept service of a purported NTA. ECF No. 25. Later that night, at 7:29 P.M., the Department of State informed Mr. Taal that his F-1 Visa was revoked. ECF No. 30-3.

Defendants now state Mr. Taal's NTA is based on 8 U.S.C. §1227(a)(1)(B), which deems removable individuals whose visas have been revoked. ECF No. 30 ¶ 4. Defendants also state this determination was based on the fact that Mr. Taal "had been involved with disruptive protests . . . ." ECF No. 30 ¶ 4. Defendants claim Mr. Taal is removable because he attended "one such protest" which "involved Taal entering a hotel behind individuals who had used force to gain entry to it as a means of disrupting a Cornell University career fair . . . ." ECF No. 30-3 ¶ 4. Mr. Taal was present for roughly five minutes.[1] He did not face any criminal charges or immigration

---

[1] Miles Klee, *Cornell Student Who Attended Pro-Palestine Protest Could Be Forced to Leave U.S.*, ROLLING STONE MAGAZINE (Sept. 26, 2024), https://www.rollingstone.com/culture/culture-features/cornell-protest-palestine-immigration-1235112444/.

1

consequences, and Cornell did not conclude he engaged in violence. *Id*. ¶¶ 2-3; ECF No. 30-2 ¶ 8; Ex. D, E.

On March 14, hours before Plaintiffs filed the present lawsuit, Defendants claim they initiated a rapid and highly coordinated inter-agency process to revoke Mr. Taal's visa. Though Defendants' declarations do not provide a reason for the sudden urgency to address the protest that had taken place six months prior, Defendants assert that they initiated and finalized a multi-agency review of the evidence of Mr. Taal's protest activity, weighed the potential statutory grounds upon which he could be deemed removable, underwent the time-consuming review mandated by the State Department for non-immigrant visa revocation by the Foreign Affairs Manual ("FAM")[2] and determined that it was necessary to revoke Mr. Taal's visa all on the same day. ECF No. 30-3 ¶ 4-5; ECF 30-1 ¶ 4.

## ARGUMENT

### I. This Court Has Jurisdiction

#### A. *The Immigration and Nationality Act Does Not Strip Jurisdiction Over Outrageous Government Actions Like Those Here*

Defendants' contention that the purported March 14 NTA deprives the Court of jurisdiction is incorrect. Even if Defendants' version of events is true, the underlying issue is that Defendants are retaliating against Mr. Taal for engaging in speech with which it disagrees. "Outrageous" acts of retribution are reviewable despite 8 U.S.C. 1252(g). *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491-92 (1999) ("*AADC*"). In *AADC*, six non-citizen

---

[2] *See* 9 F.A.M. 403.11 (available at https://fam.state.gov/fam/09FAM/09FAM040311.html). The FAM sets out special rules governing NIV revocations, including for "High Profile Cases" where "[h]asty action…must be avoided in such high-profile visa cases…" 9 FAM 403.11-4(C)(1). The Federal Regulations do not provide "protesting" as a basis for revoking F-1 status. *See* 8 C.F.R. § 214.1(e)-(f).

plaintiffs who had overstayed their visas and were removable for that reason alleged they were *also* targeted for removal for the additional reason that they were affiliated with a designated Foreign Terrorist Organization ("FTO"). The Court held, "[A]n alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488. It rejected this "selective enforcement" argument but held, "[W]e need not rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *Id.* at 491.

In *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *rev'd on other grounds*, 141 S. Ct. 227 (2020), the Second Circuit retained jurisdiction over a constitutional challenge to a final order of removal, holding that that the government's decision to re-arrest activist Ravi Ragbir because of his political statements constituted the type of "outrageous" retribution envisioned by the Supreme Court in *AADC*. The Second Circuit established a four-part test, explaining: "*AADC* compels courts to evaluate [1] the gravity of the constitutional right affected; [2] the extent to which the plaintiff's conduct or status that forms the basis for the alleged discrimination is actually protected; [3] the egregiousness of the Government's alleged conduct; and [4] the plaintiff's interest in avoiding selective treatment, as balanced against the Government's discretionary prerogative." *Id.* at 69. Defendants' actions here qualify as "outrageous" under this test.

**The Constitutional Right Affected Is Grave.** Mr. Taal unquestionably satisfies this prong. The Second Circuit held that Ragbir's criticisms of U.S. immigration policy constituted speech that "implicates the apex of protection under the First Amendment" and touched on matters of public concern that therefore "occup[y] the highest rung of the hierarchy of First Amendment values." *Id.* at 69-70. Similar to Ragbir, Mr. Taal regularly engages in speech critical of U.S. policy, as well as the policies of the Israeli government.

**Defendants' Retaliation Is Egregious.** The second prong of the *Ragbir* test asks whether the government-imposed immigration consequences are based on viewpoint discrimination. The Second Circuit looked to "Ragbir's plausible allegations and evidence," which showed that the government targeted him based on "the viewpoint of his political speech" and on "the public attention it received." *Id*. at 70. Here, Defendants admit they are targeting Mr. Taal because ICE identified him as "a prominent pro-Palestinian activist involved in protests," ECF No. 30-2 ¶ 6, and that his "involvement in *certain* protests at Cornell University align with the Executive Order's focus on deporting individuals who perpetrate 'unlawful anti-Semitic harassment'." *Id*. ¶ 9 (Emphasis added); *see also* ECF No. 30-3 ¶ 4-5. Statements by Defendant Trump and associates outlined in the Complaint make clear Defendants' aim is to chill speech. *See* ECF No. 1 ¶ 6-9.

**Mr. Taal Has A Significant Interest in Avoiding Selective Deportation.** Mr. Taal has a strong interest in avoiding removal. In *Ragbir*, the Second Circuit noted that the plaintiff there had been convicted of a crime and that this indicated his removal was punitive. *Id*. at 71-72. Here, the effort by Defendants to remove Mr. Taal is likewise punitive. Defendants acknowledge that the purpose of issuing the NTA was to punish him for engaging in past protest activity. ECF No. 30-2 ¶¶ 6, 9; ECF No. 30-3 ¶¶ 4-5. Moreover, unlike the plaintiffs in *AADC* who were removable for other reasons, Defendants concede the only basis for Mr. Taal's removal is his protected speech.

**Defendants' National Security Interest Is Nil.** The last prong asks the Court to weigh "the Government's interest in having unchallenged discretion to deport" an individual. *Ragbir*, 923 F.3d at 72. The Second Circuit noted that "national-security and foreign-policy concerns about terrorism were primary in *AADC*, and the Court expressed misgivings that a court proceeding allowing inquiry into the 'real reasons' why the Government sought to deport the plaintiffs would compromise intelligence sources and foreign relations." *Id*. Defendants make no such argument

4

here, relying instead on Mr. Taal's First Amendment activity. There is no allegation he threatens national security. All four prongs of the *Ragbir* test militate strongly in Mr. Taal's favor – even more strongly than they did for Ragbir himself. Because Defendants' conduct is outrageous, this Court has jurisdiction regardless of when Defendants commenced proceedings.

B. Article II Does Not Override Article III

Defendants are implementing the Orders by "conduct[ing] targeted analysis to substantiate [non-citizens'] alleged engagement of antisemitic activities" and otherwise identifying non-citizens "subject to the Executive Order" to recommend for removal. ECF No. 30-2 ¶¶ 4-5. In Mr. Taal's case, ICE asked the State Department to re-consider his visa because he was "involved in protests." *Id.* ¶¶ 6, 10. The Orders are no mere "internal directives," ECF No. 30 at 12, but are directions to arrest individuals based on their speech.

The Orders are subject to constitutional review. *See Trump v. Hawaii*, 585 U.S. 667, 699 (2018). "[It is] untenable to conclude that there are no judicially enforceable limitations on presidential actions . . . so long as the President *claims* that he is acting pursuant to [applicable law]." *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1332 (D.C. Cir. 1996) (emphasis in original). The Court should reject Defendants' emphasis on internal reporting. Plaintiffs challenge the orders to the extent they violate the First and Fifth Amendments, and no further. "[C]ourts have the power to compel subordinate executive officials to disobey illegal Presidential commands." *Open Soc'y Justice Initiative v. Trump*, 510 F. Supp. 3d 198, 214 (S.D.N.Y. Jan. 4, 2021) (quoting *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971).

C. The Requirements of Article III Standing Are Satisfied

Defendants' arguments that Plaintiffs' claims are not ripe and that Plaintiffs' have not suffered an injury in fact both rely on the assertion that their injuries are too speculative to satisfy

the requirements of Article III. ECF No. 30 ¶¶ 9, 11. In situations like this, "the ripeness inquiry is the same as the analysis of whether Plaintiffs have suffered an injury in fact for the purpose of establishing standing." *Open Soc'y*, 510 F. Supp. 3d. at 208. In the First Amendment context, the injury-in-fact requirement is satisfied when the plaintiff reasonably fears that their speech will result in adverse government action. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Here, Defendants purport to have issued an NTA, and this should end the inquiry.[3]

Defendants also argue that Plaintiffs' injuries are not redressable because even if the Executive Orders' directives are unconstitutional, the statutory mechanisms by which they would be achieved are not, so the same course of action is available to the government with or without an injunction. "Acts generally lawful may become unlawful when done to accomplish an unlawful end . . . ." *Western Union Tel. Co. v. Foster*, 247 U.S. 105, 114 (1918). The Court has the authority to enjoin Defendants from using any lawful authorities referenced in the Executive Orders to attain the unlawful end of punishing dissenting viewpoints.

## II. A Nationwide Injunction Is Appropriate

### A. *Plaintiffs' Constitutional Claims Are Substantially Likely to Succeed*

#### 1. Attending a Protest in the U.S. Is Not a Valid Basis for Removing a Non-Citizen

Mr. Taal has developed substantial connections to the United States and the First Amendment unquestionably applies to him. *Bridges v. Wixon*, 326 U.S. 135 (1945); *U.S. v. Verdugo-Urquidez*, 494 U.S. 259 (1990). Attending a protest constitutes protected First Amendment expressive speech and activity. *See Snyder v. Phelps*, 562 U.S. 443, 452 (2011).

---

[3] Defendants cite *Murthy v. Missouri* for the proposition that "Plaintiffs' 'right to hear' confers no standing" on the citizen-Plaintiffs because doing so would "allow[] everyone in the country to add a derivative lawsuit for every First Amendment challenge." ECF 30 at 10, n.9. That is not Plaintiffs' argument. *Murthy* held that right-to-listener standing is established where "the listener has a concrete, specific connection to the speaker," as here. 603 U.S. 43, 75 (2024).

Defendants acknowledge that Mr. Taal's purported removability is based on his attendance of a protest in August 2024. ECF No. 30-3 ¶ 4. Mr. Taal attended this protest for five minutes, no criminal charges were filed against him, and Cornell did not subject him to discipline that would trigger immigration consequences. The government claims Mr. Taal "was twice suspended at Cornell for harassment, and antisemitic conduct." ECF No. 30 at 11. They fail to cite any fact to support this false assertion because there is none. *See* Ex. D, E.

Defendants claim that a line of cases which applies to non-citizens located *outside* the U.S. means this Court is not bound to apply the First Amendment to millions of immigrants *inside* the country. This fails to address Plaintiffs' explanation that the Bill of Rights applies to non-citizens like Mr. Taal who have "substantial connections" to the U.S. *Johnson v. Eisentragger,* 339 U.S. 763 (1950); *Verdugo-Urquidez*, 494 U.S.; *DHS v. Thuraissigiam*, 591 U.S. 103 (2020). Defendants cite *Shaughnessey v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953), claiming this case stands for the proposition that the "First Amendment does not protect aliens from deportation because of membership in the Communist Party." *Mezei* was not a deportation case, it was an "exclusion" case (now called "inadmissibility"), and the distinction is fundamental here. The very page to which Defendants cite clarifies that non-citizens "who have once passed through our gates" have rights under the Constitution, while a non-citizen "on the threshold of initial entry stands on an entirely different footing." *Id*. Defendants make the same error with respect to *Kleindienst v. Mandel*, 408 U.S. 753 (1972) and *Dep't of State v. Muñoz*, 602 U.S. 899 (2024) which are likewise inapplicable here.

The INA does not bar attending a protest; this comes from the Orders. Defendants claim Mr. Taal is "subject to the commencement of removal proceedings with or without those Orders." ECF No. 30 at 14. Not so. There is no provision of the INA which bars non-citizens residing in the

7

U.S. from attending a protest or any of the other reasons cited by Defendants' declarants, which include being "a prominent pro-Palestinian activist," engaging in "loud chants" or causing too much "noise," "disorderly behavior," "following individuals" into a building, demonstrating "a disregard for the university policies," "failing to follow University directives," and "involvement in certain protests." ECF No. 30-2 ¶¶ 6-9. Defendants fail to cite a single case where any federal or administrative court has deemed a non-citizen removable under any statutory ground simply for attending a protest in the U.S. The only "authority" upon which Defendants base their actions are the statements of Defendant Trump in the Fact Sheet accompanying publication of the second Order, where he promised to order the Defendants to do exactly what he has done to Mr. Taal: "To all the resident aliens who joined in the pro-jihadist protests, we put you on notice: come 2025, we will find you, and we will deport you." ECF No. 1 ¶ 7. Defendants' investigation into Mr. Taal's speech and protest attendance did not begin until after the Orders were issued and Defendant DHS says the authority to investigate and remove Mr. Taal derives from the Orders. ECF No. 30-3 ¶ 4. Finally, Defendants' claim (ECF No. 30-1 ¶ 4) that the State Department's visa revocation decision was based on the INA and not the Orders falls flat because the State Department's declarant relied almost verbatim on language from the second Order and accompanying Fact Sheet in his explanation that "Taal had been involved with disruptive protests and had engaged in an escalating pattern of behavior, disregarding university policies and creating a hostile environment for Jewish students." ECF No. 30-1 ¶ 4.

2. <u>Defendants Are Wrong on the Merits of the First Amendment Claims</u>

All of the lawful applications Defendants claim are covered by the Orders are already covered by statute. What is new is the restriction on speech critical of the U.S. government, its institutions, American culture, and the government of Israel. This clearly constitutes a content- or

8

viewpoint-based restriction on speech. The INA contains no such provision because it would be unconstitutional. Plaintiffs have shown that a substantial number of the Orders' applications are unconstitutional in relation to any plainly legitimate sweep. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (quotation omitted).[4]

### 3. The Orders Are Reviewable for Overbreadth and Vagueness

Defendants overstate the limits on the Court's ability to review the Orders on overbreadth and vagueness grounds. There is no such categorical rule. The question is whether the Orders regulate Plaintiffs. *See F.C.C. v. Fox T.V. Stations, Inc.*, 567 U.S. 239, 253 (2012). They do. In *Santa Cruz Lesbian & Gay Comty. Ctr. v. Trump*, the plaintiffs challenged an executive order that directed agencies to make changes to various internal government contracting and grant mechanisms to ensure contracts and grants would not be awarded to organizations that "promot[ed] a list of 'divisive concepts'. . . ." 508 F. Supp. 3d. 521, 528 (N.D. Cal. Dec. 22, 2020). There, as here, the order did not impose direct penalties on individuals, but rather directed agencies to change policies that could result in individual consequences, and that is sufficient. *Id.* at 543-45. Plaintiffs here are no less subject to immigration and criminal enforcement shaped by the Orders than the contractors were by the internal grant criteria shaped by the order in *Santa Cruz*, and the potential penalties are far more severe here. Because the Orders expose individuals to punitive enforcement, they are subject to review for overbreadth and vagueness.

### B. Plaintiffs Have Been and Will Continue to Be Irreparably Harmed by the Orders

The attempted arrest and purported issuance of an NTA strengthens all Plaintiffs' ability to show irreparable harm. Defendants claim that "to the extent that Plaintiffs fear that the EOs

---

[4] There can be no compelling or even legitimate interest in chilling speech criticizing the U.S. government or the government of Israel, and attending a protest falls squarely within the core protections of the First Amendment. See *Snyder*, 562 U.S. at 452.

9

allow removals and prosecutions based on speech and association, and have consequently limited their own speech and association, their fears are unfounded based on the EOs content, as well as speculative and remote." ECF No. 30 at 25. This cannot be squared with the three sworn declarations from law enforcement officials admitting Mr. Taal was purportedly issued an NTA because he attended a protest in August 2024 and is a pro-Palestinian activist. Defendants take the position that it is lawful for them to arrest and remove a non-citizen for "involvement with disruptive protests" (ECF No. 30-3 ¶ 5) on U.S. territory and for being a "prominent pro-Palestinian activist" (ECF No. 30-2 ¶ 6), but also that the threat any non-citizen would face removal for First Amendment activity is "speculative and remote." These positions are incompatible. Defendants also claim that the risk of their recent actions are speculative because anything they do under the EO's is inherently lawful, given that each Order states that they "shall be implemented consistent with applicable law," and that "applicable law necessarily include[s] the First Amendment." ECF No. 30 at 25. Defendants cannot save themselves from constitutional scrutiny with magic words like these. Plaintiffs have therefore established irreparable injury.

C. *A National Injunction Is Appropriate and In the Public Interest*

Millions of people are situated similarly to Plaintiffs. The Executive Orders are in effect nationwide, and their chill is felt by non-citizens and citizens who want to continue lawfully protesting government action or listen to such speech. Defendant Trump explicitly stated that Mahmoud Khalil's arrest pursuant to the Orders was "the first arrest of many to come." ECF No. 1 ¶ 55. The Orders widespread impact requires a nationwide remedy to prevent ongoing harm to affected parties who have not yet been identified or arrested. The threat to punish protected speech is unconstitutional in every application and in every location. A nationwide injunction is the appropriate mechanism to remedy such a profound affront to the Constitution.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' requests for a preliminary injunction and temporary restraining order.

Dated: March 23, 2025                                   Respectfully submitted,

s/ **Eric Lee**                                         s/ **Chris Godshall-Bennett**
MI Bar No. P80058                                       DC Bar No. 1780920
Attorney for Plaintiffs                                 Attorney for Plaintiffs
24225 W 9 Mile Rd., Suite 140                           American-Arab Anti-Discrimination Committee
Southfield, MI 48033                                    910 17th St. NW, Suite 1000
Telephone: (248) 602-0936                               Washington, D.C. 20006
Fax: (202) 333-6470                                     Telephone: (202) 465-4247
Email: ca.ericlee@gmail.com                             Fax: (202) 333-6470
                                                        Email: cgb@adc.org

s/ **Mohammad Saleem**
NY Bar No. 4842753                                      s/ **Maria Kari**
Attorney for Plaintiffs                                 TX Bar No. 24127161*
Davis Ndanusa Ikhlas & Saleem LLP                       Attorney for Plaintiffs
26 Court St., Suite 603                                 Project TAHA
Brooklyn, NY 11242                                      5300 N Braeswood Blvd., Suite 4-191
Telephone: (718) 783-6819                               Houston, TX 77096
Fax: (855) 852-4742                                     Telephone: (205) 862-8005
Email: msaleem@dnislaw.com                              Fax: (202) 333-6470
                                                        Email: info@mariakari.org

s/ **Jonathan Wallace**
NY Bar No. 1733757
Attorney for Plaintiffs                                 **pro hac vice* pending
P.O. Box 728
Amagansett, NY 11930
Telephone: (917) 359-6234
Fax: (202) 333-6470
Email: jonathan.wallace80@gmail.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2025, I electronically filed this response with the Clerk of the Court for the United States District Court for the Northern District of New York by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: **s/Eric Lee**