**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————

MOMODOU TAAL, MŪKOMA WA NGŨGĨ,
And SRIRAM PARASURAMA,

                           Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States; U.S.
DEPARTMENT OF HOMELAND SECURITY;
and KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security,

                           Defendants.
————————————————————

3:25-cv-335
(ECC/ML)

Eric T. Lee, Esq., *for Plaintiffs*
Ethan B. Kanter, Chief, National Security Unit, Office of Immigration, *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### DECISION AND ORDER

On March 15, 2025, Plaintiffs filed a Complaint against President Trump, in his official

capacity as President of the United States; the U.S. Department of Homeland Security; and Kristi

Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security.

Complaint (Compl.), Dkt. No. 1.   Plaintiffs allege that portions of two executive orders—

Executive Order 14161, *Protecting the United States From Foreign Terrorists and Other National*

*Security and Public Safety Threats*, 90 Fed. Reg. 8451, 2025 WL 327875 (Jan. 20, 2025) (EO1),

and Executive Order 14188, *Additional Measures to Combat Anti-Semitism,*[1] 90 Fed. Reg. 8847,

---

[1] EO2 "reaffirms   . . . and directs additional measures to advance the policy" set forth in an
Executive Order issued by President Trump in 2019 during his first administration, Executive
Order 13899, *Combating Anti-Semitism.*  84 Fed. Reg. 68779, 2019 WL 6828559.

2025 WL 358732 (Jan. 29, 2025) (EO2)—violate their rights under the First and Fifth Amendments.  Plaintiffs seek injunctive relief against the Defendants enjoining the enforcement of portions of EO1 and EO2.

Presently before the Court are Plaintiffs' Motions for a Temporary Restraining Order.  Dkt. Nos. 2, 23.  Defendants filed an opposition on March 22, 2025, Dkt. No. 30, and Plaintiffs filed a reply on March 23, 2025, Dkt. No. 33.  A hearing was held on March 25, 2025.

## I.    Background

Plaintiff Momodou Taal, a citizen of the United Kingdom and the Republic of The Gambia, is a Ph.D. student at Cornell University.  Compl. ¶¶ 23, 30, 31.  Since entering the United States on a student visa, Taal has traveled internationally and been re-admitted after inspection.  *Id.* ¶ 34.  Taal has been "an outspoken critic of U.S. foreign policy, particularly regarding military and financial support for Israel."  Taal Aff. ¶ 2, Dkt. No. 2-2.  He has expressed his critiques, which extend to various individuals and entities in the private and public sphere, in multiple public forums.  Compl. ¶ 32.  In 2024, he faced disciplinary proceedings at Cornell University due, at least in part, to his conduct during campus protests.  *Id.* ¶ 33.

On March 14, 2025, U.S. Immigrations and Customs Enforcement (ICE) was "notified [that] the U.S. Department of State revoked Mr. Taal's [student] visa."  Patrone Aff. ¶ 4, Dkt. No. 30-1.  Between March 14 and 22, 2025, ICE "attempted to locate Mr. Taal . . . to perform a civil arrest and process him for removal proceedings before an immigration judge."  *Id.* at ¶ 5.

Plaintiffs Ngũgĩ and Parasurama are U.S. Citizens and Taal's close associates at Cornell University.  Compl. ¶¶ 16, 17, 47; Ngũgĩ Affidavit ¶ 3, Dkt. No. 2-3; Parasurama Aff. ¶ 3, Dkt. No. 2-4.

## II.    Discussion

The Court is mindful that this case presents important, complex questions regarding the Executive Branch's authority over immigration and national security concerns, and the Plaintiffs' First Amendment rights.  After carefully reviewing the limited record at this stage of the lawsuit, the Court denies the Plaintiffs' motions because they have not met their burden by a "clear showing" that they are entitled to the "extraordinary and drastic" remedy they seek.  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam).

### A.    Subject Matter Jurisdiction

#### i.    Jurisdiction Stripping Provisions

Plaintiffs have not established that the Court has subject matter jurisdiction over Taal's claim for a temporary restraining order enjoining his removal proceedings.  Pursuant to 8 U.S.C. §§ 1252(b)(9) and 1252(a)(5), "Congress has stripped the District Courts of jurisdiction to decide all legal and factual questions related to an alien's eligibility for removal." *Guzman v. Barr*, No. 1:19-cv-07163, 2021 WL 135909, at *3 (S.D.N.Y. Jan. 14, 2021) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (describing 8 U.S.C. § 1252 as a "zipper clause" which prohibits "non-final-order" judicial review of removal questions)).  "The law in the Second Circuit is clear that all such questions should be channeled into a single petition after the review of a final order of removal; until such an order is issued, the federal courts have no jurisdiction over the claims." *Id.* (citing *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000)).

Here, Taal's challenge to the basis for commencing his removal proceedings—which he argues is the enforcement of EO1 and EO2—is "part of the process by which . . . removability will be determined," and Taal's claims therefore "arise from" the removal proceedings.  *P.L. v. U.S. Immigr. & Customs Enf't,* No. 1:19-cv-01336, 2019 WL 2568648, at *3 (S.D.N.Y. June 21, 2019) ("In other words, because Plaintiffs are challenging, by seeking to enjoin, a 'part of the process by

which . . . removability will be determined,' this court does not have jurisdiction.") (citation omitted).

Plaintiffs have also failed to establish that the Second Circuit's decision in *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020), is applicable to Taal's circumstances. Taal seeks to enjoin the commencement of removal proceedings, while Ragbir was challenging a final order of removal. More importantly, Plaintiffs concede that unlike Ragbir, Taal will have the opportunity to raise his constitutional challenges before the immigration courts and, if a final order of removal is issued, before the appropriate court of appeals. Accordingly, Plaintiffs have not established that the Court has jurisdiction to enjoin Taal's removal proceedings. *See Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 488.

## ii.    Standing

"A party seeking a temporary restraining order . . . must establish standing by setting forth 'specific facts' by affidavit or other evidence; 'mere allegations' will not suffice."[2] *Pers. v. United States,* 19-cv-154, 2019 WL 258095, at * 1 (S.D.N.Y. Jan. 18, 2019) (citing *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 404 (2d Cir. 2011)). Here, it appears that Plaintiffs' claims challenging EO1 are constitutionally unripe. Plaintiffs have not established that the enforcement of EO1—which

---

[2] *See also Pers.*, 2019 WL 258095 at *1, n. 2. ("The specificity required to establish standing to seek a preliminary injunction 'will normally be no less than that required on a motion for summary judgment.' *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 907 n.8 (1990) (quoting *Nat'l Wildlife Fed. v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987)). This is so because a plaintiff's burden to demonstrate a likelihood of success on the merits 'necessarily includes a likelihood of the court's reaching the merits, which in turn depends on a likelihood that plaintiff has standing.' *Burford*, 835 F.2d at 328. This principle applies with equal force in the context of a temporary restraining order, since the legal standard for granting temporary restraining orders and preliminary injunctions is the same. *See Prospect Park Ass'n v. Delaney*, No. 18-cv-4852, 2018 WL 3542860, at *2 (S.D.N.Y. July 23, 2018))."

appears to be limited to stating specific policy intentions and preparatory actions taken in furtherance of enforcing that policy—has or will likely present an actual injury to the Plaintiffs. EO1 does not create any regulatory action, threaten imminent enforcement action against the Plaintiffs, proscribe any activity, or require Plaintiffs "to engage in, or to refrain from, any conduct." *Texas v. United States*, 523 U.S. 296, 301 (1998). In addition, Plaintiffs have not shown that any portion of EO1 has or will be relied on in any action taken against them. Accordingly, judicial resolution of Plaintiffs' challenge to EO1 is premature based on the limited record before the Court. *See Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time." (quotation omitted)); *Saline Parents v. Garland*, 88 F.4th 298, 304 (D.C. Cir. 2023) ("Government's exercise of power must be 'regulatory, proscriptive, or compulsory,'" to constitute a "cognizable chilling injury") *cert. denied*, 145 S. Ct. 144 (2024) (quoting *Laird v. Tatum*, 408 U.S. 1 (1972)).

Regarding Plaintiffs Ngũgĩ and Parasurama, under certain circumstances, citizens have First Amendment rights to listen to speech from non-citizens, such that immigration decisions regarding the speaker non-citizen cognizably injure the listener citizens. *See Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 121 (2d Cir. 2009) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 764 (1972)). This requires, however, that "the listener ha[ve] a concrete, specific connection to the speaker." *Murthy v. Missouri*, 603 U.S. 43, 75 (2024) (citing *Kleindienst*, 408 U.S. at 762). Assuming, without deciding, that Taal's relationship with Ngũgĩ and Parasurama is such a connection, the Court cannot redress their complained of injury through the relief they seek. Their alleged harm is a lack of access to Taal—a harm that could only be remedied by an order enjoining Taal's removal proceedings—which this Court lacks jurisdiction to grant. *See* 8 U.S.C. §§ 1252(b)(9), 1252(a)(5), 1252(g), 1201(i). On this record, Plaintiffs have failed to establish that

Ngũgĩ and Parasurama have standing to challenge EO2.  *See California v. Texas*, 593 U.S. 659, 671 (2021) ("To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered.") (quotations omitted).

Plaintiffs Ngũgĩ's and Parasurama's affidavits otherwise focus on harm that they have suffered in the past.  To the extent that they allege future harm to their right to listen to Taal, it is tethered to not "putting [Taal] at risk of deportation," Ngũgĩ Aff. ¶ 5, and the fear to "freely associate" with Taal, Parasurama Aff. ¶ 4.  Given that Taal's visa was revoked before the Complaint was filed and that Taal has no lawful status in the United States, it is unclear how those harms could be redressed with the requested restraining order.

### B.    Temporary Restraining Order

A temporary restraining order, like all injunctive relief, "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (cleaned up). The purpose of a temporary restraining order is limited to preserving "an existing situation in statu[s] quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) (quoting *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989)).  In considering the appropriateness of a temporary restraining order, courts "must examine whether the movant[ ] has[ ] demonstrated a threat of irreparable harm that will occur immediately to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view." *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020).  Thus, the "demonstration of irreparable harm must be considered in conjunction with the time frame involved." *Id*.

A plaintiff seeking a temporary restraining order against a government entity must establish that: (i) he "is likely to succeed on the merits"; (ii) he "is likely to suffer irreparable harm in the absence of preliminary relief"; and (iii) "the balance of equities tips in [the plaintiff's] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020).

The Second Circuit has made clear that although "impairment of First Amendment rights can undoubtedly constitute irreparable injury, [it is often] more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights." *Lore v. City of Syracuse*, No. 00-cv-1833 (HGM/DEP), 2001 WL 263051, at *7 (N.D.N.Y. Mar. 9, 2001) (quoting *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997)); *see also Siracusa v. New Hyde Park-Garden City Union Free Sch. Dist.*, No. 24-cv-01002, 2024 WL 3875793, at *8 (E.D.N.Y. Aug. 19, 2024) ("Mere assertion of a constitutional injury, such as a First Amendment harm, is insufficient to establish irreparable harm.") (citing *A.H. by and through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021)); *California v. Azar,* 911 F.3d 558, 581 (9th Cir. 2018) ("The analysis focuses on irreparability, 'irrespective of the magnitude of the injury.'") (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999)).

Jurisdictional issues aside, Plaintiffs Ngũgĩ and Parasurama have not established that there is an imminent or ongoing threat to their constitutional rights that could be appropriately remedied by the requested restraints.  Any future harm alleged in their affidavits appears to be speculative and even moot because of the revocation of Taal's visa.  To the extent that Ngũgĩ and Parasurama assert that their ability to associate with Taal has been chilled because of their concern about his removal, Taal was already subject to removal proceedings before the complaint was filed.  As

discussed, Ngũgĩ and Parasurama have not established how the requested restraining order would remedy any ongoing violation of their right to listen to Taal.  Plaintiffs Ngũgĩ and Parasurama have also failed to establish that they are under any imminent threat of prosecution stemming from EO2.  Plaintiffs have not shown that EO2 has been enforced against a U.S. citizen in any capacity, much less enforced or threatened to be enforced against them specifically.

Finally, Plaintiffs have failed to demonstrate irreparable harm to Taal that will occur immediately justifying a temporary restraining order enjoining the enforcement of EO1 and EO2.  To the extent a violation of Taal's First Amendment rights subjected him to the commencement of removal proceedings, Plaintiffs have not shown that this claim is within the jurisdiction of the Court.  Plaintiffs have not otherwise established what future injury to Taal a temporary restraining order could prevent.

## III.    Conclusion

It is hereby **ORDERED**, for all of the above reasons, Plaintiffs' motions for a temporary restraining order, Dkt. Nos. 2, 23, are **DENIED**.

The Court is aware that this Decision and Order has been issued simultaneously with Plaintiffs' filing of an Amended Complaint.  *See* Dkt. No. 38.  By April 4, 2025, the parties shall submit a brief to the Court on the issue of whether a hearing on the Motion for a Preliminary Injunction tethered to the initial Complaint is appropriate, in light of Plaintiffs' Amended Complaint and the jurisdictional deficits noted above.

**IT IS SO ORDERED.**

Dated: March 27, 2025

Elizabeth C. Coombe
U.S. District Judge