## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOMODOU TAAL, | |
| *Plaintiff-Petitioner*, | |
| MŨKOMA WA NGŨGĨ, and SRIRAM PARASURAMA, | |
| *Plaintiffs*, | Civil Action No. 3:25-cv-00335-ECC-ML |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of the U.S. Department of State; PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; and THOMAS BROPHY, in his official capacity as Field Office Director of the Buffalo Immigration and Customs Enforcement Office, | |
| *Defendants-Respondents*. | |

## PLAINTIFF-PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND REQUEST FOR AN ORDER TO SHOW CAUSE

Pursuant to Fed. R. Civ. P. 65(b) and Local Rules 7.1(e) and 65.1, Plaintiff-Petitioner Momodou Taal moves for a temporary restraining order against Defendants-Respondents President Donald J. Trump, the United States Department of Homeland Security ("DHS"), DHS Secretary Kristi Noem, ICE Acting Director Todd M. Lyons, and ICE Buffalo Field Office Director Thomas Brophy pending the adjudication of his motion for a preliminary injunction.

i

Plaintiffs also request the Court issue an Order to Show Cause why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65.1.

This motion seeks to enjoin Defendants-Respondents President Donald J. Trump, DHS, DHS Secretary Kristi Noem, ICE Acting Director Todd M. Lyons, and ICE Buffalo Field Office Director Thomas Brophy from attempting to detain or remove Mr. Taal pending adjudication of this request for a preliminary injunction, and grant any other relief that the Court deems just and proper. This motion is based on the Amended Complaint (ECF No. 38), the previously filed motion for a temporary restraining order/preliminary injunction (ECF No. 2), the brief accompanying this motion, any additional briefings and oral arguments of counsel, and such other and further matters as may be presented to the Court. Additionally, we respectfully request the Court to consider the underlying motion for a temporary restraining order/preliminary injunction (ECF No. 2) in light of the new facts and claims raised in the Amended Complaint (ECF No. 38) given that the underlying facts and legal issues remain the same. Should the Court direct Plaintiffs to submit a new motion to replace ECF No. 2, the undersigned will do so.

Absent the issuance of a temporary restraining order, Plaintiff-Petitioner will suffer immediate and irreparable harm because he is at imminent risk of detention and deportation, may be spirited away from the Court's jurisdiction or out of the country altogether, and is subject to restraints on his liberty to which the general public is not. It is not in dispute that the government is actively attempting to arrest and detain him.

Pursuant to Fed. R. Civ. P. 65(b) and Local Rules 7.1(e) and 65.1, attached to this motion are affidavits demonstrating the immediate and irreparable harm Plaintiff-Petitioner will suffer if Defendants-Respondents are permitted to detain him. The affidavits further show good and sufficient cause why the standard motion procedure cannot be used with regard to this motion

given that the absence of an injunction preventing Mr. Taal's detention will perpetuate his current effective confinement or result in his unlawful detention.

Defendants-Respondents' counsel has entered an appearance in this matter and is notified of this motion by CM/ECF. Additionally, the undersigned have emailed Defendants-Respondent's counsel to notify them of this motion.

Dated: March 27, 2025                      Respectfully submitted,

**s/ Eric Lee**
MI Bar No. P80058
Attorney for Plaintiffs
24225 W 9 Mile Rd., Suite 140
Southfield, MI 48033
Telephone: (248) 602-0936
Fax: (202) 333-6470
Email: ca.ericlee@gmail.com

**s/ Mohammad Saleem**
NY Bar No. 4842753
Attorney for Plaintiffs
Davis Ndanusa Ikhlas & Saleem LLP
26 Court St., Suite 603
Brooklyn, NY 11242
Telephone: (718) 783-6819
Fax: (855) 852-4742
Email: msaleem@dnislaw.com

**s/ Jonathan Wallace**
NY Bar No. 1733757
Attorney for Plaintiffs
P.O. Box 728
Amagansett, NY 11930
Telephone: (917) 359-6234
Fax: (202) 333-6470
Email: jonathan.wallace80@gmail.com

**s/ Chris Godshall-Bennett**
DC Bar No. 1780920
Attorney for Plaintiffs
American-Arab Anti-Discrimination Committee
910 17th St. NW, Suite 1000
Washington, D.C. 20006
Telephone: (202) 465-4247
Fax: (202) 333-6470
Email: cgb@adc.org

**s/ Maria Kari**
TX Bar No. 24127161
Attorney for Plaintiffs
Project TAHA
5300 N Braeswood Blvd., Suite 4-191
Houston, TX 77096
Telephone: (205) 862-8005
Fax: (202) 333-6470
Email: info@mariakari.org

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOMODOU TAAL, | |
| *Plaintiff-Petitioner*, | |
| MŨKOMA WA NGŨGĨ, and SRIRAM PARASURAMA, | |
| *Plaintiffs*, | Civil Action No. 3:25-cv-00335-ECC-ML |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of the U.S. Department of State; PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; and THOMAS BROPHY, in his official capacity as Field Office Director of the Buffalo Immigration and Customs Enforcement Office, | |
| *Defendants-Respondents*. | |

### PLAINTIFFS-PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**

## PRELIMINARY STATEMENT

Plaintiff-Petitioner Momodou Taal respectfully seeks an immediate temporary restraining order, pending adjudication of this request for a preliminary injunction, to prevent his unlawful detention and transfer to a detention site beyond this District before the Court can hear his claims. Because Defendant-Respondent Department of Homeland Security ("DHS") acknowledges it is presently attempting to detain Mr. Taal and has spirited away similarly situated students to detention centers beyond the jurisdiction of detainee's domicile, the urgent relief he seeks here is necessary.

On March 15, 2025, Mr. Taal and two U.S. citizen co-Plaintiffs, Mũkoma Wa Ngũgĩ and Sriram Parasurama, challenged the constitutionality of two executive orders, "Protecting the United States from Terrorists and National Security and Public Safety Threats," Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 30, 2025) ("EO 1") and EO 2: "Additional Measures to Combat Anti-Semitism," Exec. Order No. 14188, 90 Fed. Reg. 8847 (Feb. 3, 2025).

Subsequent to the filing of the original complaint and accompanying motion for a Temporary Restraining Order, Defendants-Respondents have engaged in an ongoing attempt to arrest and detain Mr. Taal. On March 27, 2025, Plaintiffs Prof. Wa Ngũgĩ and Mr. Parasurama and Plaintiff-Petitioner Mr. Taal filed an Amended Complaint, ECF No. 38, which is based substantially on the same claims as the original Complaint and motion for a Temporary Restraining Order. In the Amended Complaint, Plaintiff-Petitioner Taal also challenged the impending detention through a petition for a Writ of Habeas Corpus. The instant motion addresses the imminent and unlawful threat of Mr. Taal's detention and possible removal by Defendants-Respondents from this Court's jurisdiction. This motion urgently seeks interim relief, on narrower grounds, for which the underlying facts are not in genuine dispute.

1

Namely, Mr. Taal seeks an order preventing DHS from summarily detaining him based on protected speech supporting Palestinian rights and criticizing the U.S. government and government of Israel. Whatever justifications the government may offer in defense of the Executive Orders (as to which Mr. Taal makes no concession), DHS detention of Mr. Taal would be unlawful on multiple counts, outrageously violating his First Amendment and due process rights, as well as the Immigration and Nationality Act (INA). And, whatever jurisdictional objections the government might interpose in this action, none bars review of the narrow issue of the constitutionality of incarcerating Mr. Taal pending further litigation.

Indeed, Congress has expressly provided district court jurisdiction over visa revocations that lead to removal proceedings where the sole basis for the removal is 8 U.S.C. § 1201(i), which is undisputedly the case here. *See* 8 U.S.C. §1201(i) ("There shall be no means of judicial review . . . of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.").

Accordingly, to prevent irreparable harm pending adjudication the requested preliminary injunctions, Mr. Taal respectfully moves the Court for a temporary restraining order preventing his detention.

## STATEMENT OF FACTS

**Cornell University Graduate Student Momodou Taal.** Plaintiff-Petitioner Momodou Taal is a citizen of the United Kingdom and the Republic of The Gambia and currently resides in Tompkins County, New York. He is a 31-year- old Ph.D. student in Africana Studies at Cornell University and holds a bachelor's degree in law from the University of East Anglia in the United Kingdom. ECF No. 38 ¶ 18. In the course of his early academic career, he has participated in numerous scholarly panels and authored significant academic works. *Id*. He has spoken at events

hosted by Harvard University, Sheffield University, the Muslim Council of Britain, and the Tahara Collective in Lagos, Nigeria. His first book, *The Malcolm Effect: Revisited*, was published in February 2025. *Id*.

Mr. Taal's academic journey and professional journey has been shaped by a deep commitment to understanding the historical, cultural, and geopolitical roots of social injustice and political oppression. He is a vocal advocate for Palestinian human rights and a consistent critic of state and institutional actors – including the governments of Israel and the United States – whom he believes are complicit in conducting a genocide against the people of Palestine. *Id.* ¶ 35. Mr. Taal faced university disciplinary measures for his participation in student protests and was temporarily suspended on April 26, 2024, and September 23, 2024. *Id.* ¶ 44. However, Cornell did not impose any sanctions affecting his immigration status. *Id*.

As a result of the executive orders, Mr. Taal has been forced to profoundly alter his prior speech and association patterns. He has refrained from attending protests and public political meetings, has substantially reduced his activity on social media, and no longer discusses politics with associates from Cornell, fearing his words will be misinterpreted or reported to government. *Id.* ¶ 60. Critically, Mr. Taal has been forced to cancel travel to international academic events. For example, he was invited by Queens University in Toronto, Ontario to speak at a launch event for his book, *The Malcolm Effect: Revisited*. *Id.* ¶ 61. He was unable to attend for fear of being unlawfully detained and deported upon arrival at a U.S. port of entry. He is also fearful of traveling to London to visit family and friends. *Id*.

**Defendants Enforce Executive Orders Against Mr. Taal.** Defendants acknowledge they are enforcing the Executive Orders against Mr. Taal. ICE HIS Unit Chief Stanley declared: "Mr. Taal's involvement in certain protests at Cornell University align with the Executive Order's focus

on deporting individuals who perpetrate 'unlawful anti-Semitic harassment.' His involvement in these disruptive protests creates a hostile environment for Jewish students." Ex. H ¶ 9.

On Wednesday, March 19, 2025, Defendant-Respondent DHS visited Mr. Taal's place of residence in what Defendants-Respondents acknowledge was an attempt to detain him. Patrone Decl., Ex. G ¶ 5. That afternoon, Plaintiffs filed an emergency motion for a TRO and request for an Order to Show Cause asking the Court enjoin Defendants-Respondents from attempting to detain or remove Mr. Taal pending the adjudication of the initial TRO motion. Ex. L. At 12:52 A.M. on Friday, March 21, Defendants-Respondents asked Mr. Taal to surrender to ICE custody and accept service of a purported NTA. *Id.* The email reads, in part:

> U.S. Immigration and Customs Enforcement (ICE) has asked us to convey to you the following. ICE invites Mr. Taal and his counsel to appear in-person at the HSI Office in Syracuse at a mutually agreeable time for personal service of the NTA and for Mr. Taal to surrender to ICE custody. Accordingly, if you are interested in proposing such a date and time, we will promptly forward it to ICE for consideration.

*Id.* According to John Armstrong, Senior Bureau Official within the U.S. Department of State's Bureau of Consular Affairs, later that night, at 7:30 P.M., the Department of State informed Mr. Taal that his F-1 Visa was revoked. Armstrong Decl., Ex. I ¶ 5.

Deputy Special Agent in Charge for the Buffalo Field Office of ICE HSI, Anthony Patrone, submitted a sworn declaration stating that "On March 14, 2025, ICE was notified the US Department of State revoked Mr. Taal's F-1 visa. Due to the revocation, Mr. Taal is removable from the United States pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act for being an alien who is present in the United States in violation of law or whose authorization to be present in the United States has been revoked under Section 221(i) [8 U.S.C. § 1201(i)]. Mr. Taal's presence without status and in violation of immigration law is the basis of ICE's

4

enforcement action." Patrone Decl., Ex. G ¶ 4. Special Agent Patrone's sworn declaration concludes: "Between March 14, 2025, and the present, ICE has attempted to locate Mr. Taal in the Ithaca, New York area to perform a civil arrest and process him for removal proceedings before an immigration judge, including serving Mr. Taal with a copy of a Form I-862, Notice to Appear . . . ." *Id.* ¶ 5.

Defendants-Respondents' enforcement of the "anti-Semitism Orders" (referred to in the plural by Officer Armstrong, Armstrong Decl., Ex. I ¶ 5) is based on a policy of equating protected speech activity with "unlawful anti-Semitic harassment and violence." Unit Chief Stanley explained in his sworn declaration that according to Defendant-Respondent DHS, "Mr. Taal's involvement in certain protests at Cornell University align with the Executive Order's focus on deporting individuals who perpetuate 'unlawful anti-Semitic harassment.' His involvement in these disruptive protests creates a hostile environment for Jewish students." Stanley Decl., Ex. H ¶ 9. Defendants claim Mr. Taal is removable because he attended "one such protest" which "involved Taal entering a hotel behind individuals who had used force to gain entry to it as a means of disrupting a Cornell University career fair . . . ." Armstrong Decl., Ex. I ¶ 4. Mr. Taal was present at this protest for roughly five minutes.[1] He did not face any criminal charges or immigration consequences, and Cornell did not conclude he engaged in violence, harassment or antisemitic behavior. Armstrong Decl., Ex. I ¶¶ 2-3; Stanley Decl., Ex. H ¶ 8; Ex. J, K.

**The Executive Orders and the Statutory Basis for Mr. Taal's Placement in Removal Proceedings.** According to Defendants-Respondents' declarants, the sole ground of removability here is 8 U.S.C. §1227(a)(1)(B). According to Officer Armstrong of the State Department Bureau

---

[1] Miles Klee, *Cornell Student Who Attended Pro-Palestine Protest Could Be Forced to Leave U.S.,* ROLLING STONE MAGAZINE (Sept. 26, 2024), https://www.rollingstone.com/culture/culture-features/cornell-protest-palestine-immigration-1235112444/.

of Consular Affairs:

> [O]n March 14, 2025, the State Department revoked Mr. Taal's visa pursuant to Section 221(i) of the INA, 8 U.S.C. §1201(i). While DHS/ICE's written communication referenced President Trump's Executive orders on anti-Semitism and Section 237(a)(4)(C) of the INA, the Department's basis for revoking Taal's visa did not rely on Section 237(a)(4)(C)…Rather, the Department relied upon the underlying information and assessment provided by DHS/Ice that Taal had been involved with disruptive protests and had engaged in an escalating pattern of behavior, disregarding university policies and creating a hostile environment for Jewish students. Importantly, this documented pattern of activity brought into question Taal's ability to establish his continued entitlement to nonimmigrant F-1 status, thereby implicating the Department's discretionary authority to determine whether to revoke that visa under Section 221(i) of the INA.

Armstrong Decl., Ex. I ¶ 5. The visa was revoked solely because of 8 U.S.C. §1201(i) and for no other statutory reason.

> This was confirmed by Deputy Patrone, who stated in his affidavit:

> On March 14, 2025, ICE was notified the US Department of State revoked Mr. Taal's F-1 visa. Due to the revocation, Mr. taal is removable from the United States pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act for being an alien who is present in the United States in violation of law or whose authorization to be present in the United States has been revoked under Section 221(i). <u>Mr. Taal's presence in the United States without status and in violation of immigration law is the basis of ICE's enforcement action</u>."

Patrone Decl., Ex. G ¶ 4 (emphasis added).

## LEGAL STANDARD

To prevail on the underlying motion, Plaintiff-Petitioner must show "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff[s'] favor; and (3) that the public's interest weighs in favor of granting the injunction."

6

*Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) (setting forth preliminary injunction standard); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002). ("The standard for granting a temporary restraining order and a preliminary injunction . . . are identical.").

**ARGUMENT**

Mr. Taal faces the imminent prospect of unconstitutional detention for exercising his First Amendment rights. A temporary restraining order preventing such an outcome is warranted in light of Mr. Taal's likelihood of success on the merits, the irreparable harm he will experience absent injunctive relief, and the balance of hardships, which overwhelmingly favors Mr. Taal.

## I. MR. TAAL IS LIKELY TO SUCCEED ON THE MERITS

### A. This Court Has Jurisdiction Over Mr. Taal's Claims

The sole ground for Mr. Taal's removal is the revocation of his visa pursuant to 8 U.S.C. § 1201(i) giving this Court jurisdiction. Congress has provided for district court jurisdiction over claims arising from a visa revocation when it forms the "sole ground for removal." 8 U.S.C. § 1201(i) ("There shall be no means of judicial review . . . *except in the context of a removal proceeding if such revocation provides the sole ground for removal* under Section 1227(a)(1)(B) of this title.") (emphasis added). This action is brought through a petition for a Writ of Habeas Corpus because of Mr. Taal's current-effective and imminent-actual detention, but § 1201(i) grants this Court jurisdiction over all claims related to his visa's revocation.

### 1. *The Writ Would Prevent the Government from Removing Mr. Taal or Spiriting Him Away from this Jurisdiction*

A Writ of Habeas Corpus is appropriate where its issuance would "prevent the Government from deporting [a non-citizen] for its duration." *Ragbir v. Homan*, 923 F.3d 53, 74 (2d Cir. 2019). Courts are "invested with the largest power to control and direct the form of judgment to be entered

in cases brought up before [them] on habeas corpus." *U.S. ex rel. D'Amico v. Bishopp*, 286 F.2d 320, 322 (2d Cir. 1961) (quoting *In re Bonner*, 151 U.S. 242, 261 (1894). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 290-92 (1969). Moreover, 28 U.S.C. § 2241 incorporates the common-law habeas custody requirement and "does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963).

Here, Mr. Taal faces the imminent prospect of prolonged detention which may result in Defendants-Respondents spiriting him out of the jurisdiction of this Court. Defendants-Respondents' policy is to remove individuals from the territoriality of the United States, meaning it is possible Mr. Taal could be removed beyond the jurisdiction of any Article III Court, including to El Salvador or Guantanamo Bay, Cuba.

 2. *Mr. Taal Is "In Custody" for Habeas Purposes*

  i. Physical Detention Is Not a Requirement in this Circuit

An individual need not be in physical detention in order for a federal court to have jurisdiction over his petition for a Writ of Habeas Corpus. The Supreme Court has rejected this argument: "[W]e would badly serve the purposes and the history of the writ to hold that under these circumstances the petitioner's failure to spend even 10 minutes in jail is enough to deprive the District Court of power to hear his constitutional claim." *Hensley v. Mun. Court, San Jose Milpitas Juridical Dist*, 411 U.S. 345, 353 (1973). Such a formal restriction on the writ would defy its ancient purpose: "[T]he writ is available . . . to attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).

8

This Circuit has supported this reading. In *Ragbir*, the Second Circuit held that Ragbir's liberty from detention was not a bar on his ability to raise a petition for the Writ given the circumstances, quoting *Hensley* to hold that the "custody requirement" of habeas corpus "'is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty . . . . [I]ts use has been limited to cases of special urgency' that are 'severe' and 'immediate.'" *Ragbir*, 923 F.3d at 75 (quoting *Hensley*, 411 U.S. at 351). The Second Circuit explained that in *Hensley*, the Supreme Court noted it had "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements . . . . That same theme has indelibly marked our construction of the . . . custody requirement." 411 U.S. at 350.

The Second Circuit in *Ragbir*, following *Hensley*, explained that the question is whether the petitioner is "subject to restraints not shared by the general public" because their "freedom of movement rests in the hands" of government officials who "may demand his presence at any time and without a moment's notice," and whether the petitioner "has been forced to fend off the state authorities by means of a stay, and those authorities retain the determination and the power to seize him as soon as the obstacle of the stay is removed." *Ragbir*, 923 F.3d at 75 (quoting *Hensley*, 411 U.S. at 351-52).

        ii.    Mr. Taal Is Subject to Restraints Not Shared by the General Public and Defendants Have Emphatically Indicated Their Desire to Put Mr. Taal Behind Bars

Mr. Taal is clearly subject to restraints not shared by the general public, and Defendants-Respondents have made plain their imminent plans to detain Mr. Taal. Defendants-Respondents state their aims explicitly in declarations that in the days following the purported March 14 visa revocation, they began surveilling his house in an attempt to arrest and detain him. Patrone Decl.,

Ex. G ¶ 5. In the early morning hours of March 21, Defendants-Respondents communicated to Mr. Taal's counsel a demand that he surrender to ICE custody. Ex. L. He faces the threat of imminent detention and deportation.

If the Second Circuit held that Article III Courts had jurisdiction to hear the plaintiff's habeas petition in *Ragbir*, this Court should determine it has jurisdiction over Mr. Taal's petition here. In *Ragbir*, the Second Circuit explained: "If Ragbir were currently in the Government's physical confinement or had already been deported, that Ragbir would be in custody is obvious. But that he has not been deported is not for a lack of effort on the part of the Government . . . ." *Ragbir*, 923 F.3d at 75-76. Because "Ragbir faces imminent deportation, which necessarily involves a period of detention—and that he must comply, absent judicial intervention, with the Government's orders 'at any time and without a moment's notice,' is not in question. That effects a present, substantial curtailment of Ragbir's liberty." *Id.* (Quoting *Hensley*, 411 U.S. at 351). *See also Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003). The same is true here.

     iii.    Mr. Taal Possesses No Adequate Alternative to Habeas Corpus

Congress has not provided an adequate substitute for the Writ, and Defendant Trump has not formally suspended the writ under Article 1, Section 9 of the Constitution. As such this Court has jurisdiction to hear his habeas petition.

  B.  <u>Mr. Taal's Imminent Detention Would Violate the First Amendment</u>

    *1.  Mr. Taal's Detention Would Violate His Right to Be Free from First Amendment Retaliation*

In contrast to a typical First Amendment retaliation case, where the plaintiff must shoulder the burden of smoking out retaliatory animus against the defendant's facially legitimate reason for its action, here Defendants-Respondents openly aim to deprive Mr. Taal of his liberty because of

10

his exercise of First Amendment rights. To protect against such blatant and injurious retaliation, the Court should grant injunctive relief.

To succeed on his First Amendment claim, Mr. Taal must show that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)). Mr. Taal is likely to demonstrate each of those elements here.

First, Mr. Taal's expressive activity lies at the core of First Amendment protection. Speech on matters of "public concern is at the heart of the First Amendment[]" and is entitled to "special protection." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (internal quotations omitted). Similarly, "[s]peech critical of the exercise of the State's power lies at the very center of the First Amendment." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991). Mr. Taal's speech and symbolic expression supporting Palestinian rights and criticizing U.S. government support for Israel relate to a matter of widespread public concern. And because this "speech concerns 'political change,' it is also 'core political speech' and thus 'trenches upon an area in which the importance of First Amendment protections *is at its zenith*." *Ragbir*, 923 F.3d at 70 (quoting *Meyer v. Grant*, 486 U.S. 414, 412-22, 425 (1988)).

Mr. Taal's status as a non-citizen does not alter this analysis. "Freedom of speech and press is accorded aliens residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945); *see also Parcham v. INS*, 769 F.2d 1001, 1004 (4th Cir. 1985) ("It has long been held that aliens residing in this country enjoy the protection of the First Amendment, [including] the right to peaceful expression of views through public demonstration."). Indeed, the speech of a non-citizen on an issue central to "current political debate among American citizens and other residents" lies "'at the

heart of First Amendment protection' and 'occupies the highest rung of the hierarchy of First Amendment values.'" *Ragbir*, 923 F.3d at 69-70 (cleaned up) (quoting *Snyder*, 562 U.S. at 451-52). Limiting speech rights to citizens would betray our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). While the federal government's basis for its outrageous actions here and in other cases may be difficult to comprehend or even downright puzzling, what is abundantly clear is that, under existing law, Mr. Taal is likely to succeed.

The second prong—usually the subject of heated disagreement in a First Amendment retaliation case—is not in dispute here. As described above, federal officials have enthusiastically broadcast that they are identifying non-citizen activists like Mr. Taal for detention and deportation based on their speech and associations. Defendants-Respondents' declarants admit that they targeted Mr. Taal on the basis of his pro-Palestinian activism. Armstrong Decl., Ex. I ¶ 5.

With respect to the third prong, depriving Mr. Taal of his liberty plainly would inflict grievous harm. Moreover, DHS has spirited away every other pro-Palestinian non-citizen activist it has detained based on their speech to detention sites in Louisiana or Texas, far from their counsel and the evidence and events giving rise to their expression-based detention.[2] An injunction preventing Mr. Taal's detention thus guards against DHS actions to deprive this Court of

---

[2] Laura Romero, *Judge blocks deportation of Georgetown fellow detained by immigration authorities*, ABC NEWS (Mar. 20, 2025), https://abc7ny.com/post/judge-patricia-tolliver-giles-blocks-deportation-badar-khan-suri-georgetown-researcher-detained-immigration-authorities/16057473/ (detention of Georgetown fellow Dr. Badar Khan Suri in Louisiana); Michael Wilson, Michael Rothfeld, Ana Ley, *How a Columbia Student Activist Landed in Federal Detention*, N.Y. TIMES (Mar. 17, 2025), https://www.nytimes.com/2025/03/16/nyregion/mahmoud-khalil-columbia-university.html (detention of Columbia student Mahmoud Khalil in Louisiana); Katherine Faulders et al., *DHS arrests another student involved in Columbia university protests*, ABC NEWS (Mar. 14, 2025) (detention of student Leqaa Kordia in Louisiana).

jurisdiction to review his case.[3] Finally, granting a temporary restraining order and injunctive relief would enable Mr. Taal to defend against his deportation (*i.e.*, absent vacatur of the policy at issue) without having to weigh whether to submit to removal or endure the dangerous conditions associated with ICE detention.

2. *Mr. Taal's Detention Would Constitute Unconstitutional Viewpoint Discrimination*

"It is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828-30 (1995)). "Such discrimination based on viewpoint is an egregious form of content discrimination, which is presumptively unconstitutional." *Id.* (cleaned up).

While there has been intense political debate and protest on all sides regarding Israel's ongoing military campaign in Gaza and its devastating human toll on Palestinians, the government is explicitly targeting for reprisal only speakers supporting Palestinian rights. That is textbook viewpoint discrimination. It "targets not subject matter, but particular views taken by speakers on a subject," *Rosenberger*, 515 U.S. at 829, and it does so "because of 'the specific motivating ideology or the opinion or perspective of the speaker.'" *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 31 (2d Cir. 2018) (quoting *Rosenberger*, 515 U.S. at 829). Such discrimination "'is presumed to be unconstitutional.'" *Id.* (quoting *Rosenberger*, 515 U.S. at 828). The government is not

---

[3] Article III of the Constitution vests courts with inherent powers, supplemented by the All Writs Act, 28 U.S.C. § 1651, to take steps to protect their jurisdiction. *See United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction . . . ."); *see also LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994) ("To preserve the status quo a court may require the parties to act or to refrain from acting.").

empowered to pick and choose which sides of an issue will be aired publicly and which will be suppressed. *See, e.g.*, *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018) ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics . . . or other matters of opinion.") (quoting *W. Va. Bd. of Educ. V. Barnette*, 319 U.S. 624, 642 (1943)).

Moreover, the communicative impact of Mr. Taal's protected expression—*i.e.*, that fact that some might find his advocacy in support of Palestinian rights uncomfortable, offensive, or upsetting—does not diminish its protection under the First Amendment. *See Matal*, 582 U.S. at 244; *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Indeed, "a function of free speech under our system of government is to invite dispute," and it may "best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). The First Amendment therefore protects "even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder*, 562 U.S. at 461. This protection extends to "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times*, 376 U.S. at 270.

The First Amendment's protections for controversial speech applies just as robustly to speech that offends foreign audiences, including foreign government officials, as speech that offends domestic ones. *See Boos v. Barry*, 485 U.S. 312, 322 (1988) ("[W]e have indicated that in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide 'adequate 'breathing space' to the freedoms protected by the First Amendment.' . . . We are not persuaded that the differences between foreign officials and American citizens require us

14

to deviate from these principles here." (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988))). The First Amendment's protections for free expression are well known the world over, and foreign audiences are not likely to mistake the government's constitutionally compelled tolerance of dissent for endorsement of the views expressed by dissidents. *Cf. Widmar v. Vincent*, 454 U.S. 263, 271 n.10 (1981) ("[B]y creating a forum the University does not thereby endorse or promote any of the particular ideas aired there. Undoubtedly many views are advocated in the forum with which the University desires no association.").

These bedrock principles apply with full force to non-citizens. The First Amendment freedoms of speech and press do not "acknowledge[] any distinction between citizens and resident aliens. They extend their inalienable privileges to all 'persons' and guard against any encroachment on those rights by federal or state authority." *Bridges*, 326 U.S at 161 (Murphy, J., concurring). Granting injunctive relief against detention would prevent the coercive, chilling, and immediate harmful effect of the government's viewpoint-discriminatory targeting of Mr. Taal.

C.  Mr. Taal's Imminent Detention Would Violate Due Process

*1.  Mr. Taal's Detention Would Serve No Constitutionally Permissible Purpose*

The Constitution establishes due process rights for "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). There are only two legitimate purposes for immigration detention: mitigating flight risk and preventing danger to the community. *See id.* Mr. Taal presents neither concern. He is a Ph.D. candidate at Cornell University and a respected member of the Ithaca community. He has never been arrested or charged with any crime. Should the government

proceed with removal proceedings against him, he has every reason not to abscond and poses no threat to the community.

### 2. Mr. Taal's Detention Would Violate the Constitutional Prohibition on Enforcing Vague Rules

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A policy can be vague if the government fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or if it would "authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). When speech is involved, particularly "rigorous adherence to [due process] requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-55 (2012). And the requirement for rigorous scrutiny is only heightened when enforcement would entail severe consequences, such as detention. *See*, *e.g.*, *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997) (noting that the "severity of criminal sanctions may well cause speakers to remain silent").

Even to this day—let alone at the time his past expression—the government has failed to give Mr. Taal sufficient notice of what expressive activity could lead to his sudden detention. It appears that any advocate for Palestinians' dignity and their right to live, and any vocal critic of Israeli or U.S. policy towards Palestinians, would be subject to detention. Defendants-Respondent's declarants here have not provided any reason beyond the fact that Mr. Taal engaged in a protest las year. Armstrong Decl., Ex. I ¶ 5.

None of this is sufficient to give Mr. Taal notice to constrain the government's unfettered "use of shifting or illegitimate criteria." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758 (1988). The reasoning the government proffers for Mr. Taal's detention sweep

16

across a range of constitutionally protected speech and activities, making it impossible for individuals to know if and when penalties will be enforced. *See United States v. Loy*, 237 F.3d 251, 264-65) (3d Cir. 2001) (explaining that where individuals can "hardly be expected to discern, in advance, which [speech is] prohibited," a policy risk "chill[ing] protected conduct" and is therefore unconstitutionally vague"). Thus, any DHS detention of Mr. Taal would violate the constitutional prohibition on enforcing vague rules.

D. Mr. Taal's Imminent Detention Would Violate the INA

The Administrative Procedure Act provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2). The government's targeting of Mr. Taal for detention violates the Constitution, as set forth above. It is also not in accordance with statutory law. Both by its plain terms and constitutionally construed, the INA does not and could not confer authority on the government to banish a student for participating in discussions and demonstrations on his college campus. And, as relevant to the instant motion, because DHS has no authority to remove Mr. Taal, it has no lawful basis to detain him.

The government may demand deference to Defendants-Respondent's determination that Mr. Taal's visa be revoked and he removed, but no provision of law requires such blind deference, and indeed the INA does not permit it when a removal is based solely on the revocation of a visa. *See* 8 U.S.C. § 1201(i). The construction of the INA to permit such unfettered power to the government would raise the gravest of constitutional problems. It would enable the government to wield deportation as a sword of Damocles over all non-citizens, rendering hollow the assurance that "[f]reedom of speech and of press is accorded aliens residing in this country." *Bridges*, 326

17

U.S. at 148. The *in terrorem* effect of such unbounded power would doom vast swaths of non-citizen political speech in the United States. The Supreme Court has instructed, time and again, that any interpretation raising such constitutional problems should be avoided where another interpretation is possible. *See*, *e.g.*, *Clark v. Martinez*, 543 U.S. 371, 381-82 (2001).

Defendants-Respondents' revocation of Mr. Taal's visa is arbitrary and capricious and fails to meet the requirements of the statute because it is admittedly predicated solely on his protected speech. Because the government lacks any valid basis to remove Mr. Taal, his detention would serve no lawful purpose.

Thus, and as detailed above, Plaintiff-Petitioner is likely to succeed on the merits of the claims he has pled, ECF No. 38. However, even if the Court were to assess Mr. Taal's likelihood of success differently, there can be no doubt that he presents at least "a serious question going to the merits to make them fair ground for trial," alongside "a balance of hardships tipping decidedly in his favor." *Red Earth LLC*, 657 F.3d at 143. Indeed, the constitutional concerns delineated above are of the weightiest order, are beyond colorable, and are appropriate for adjudication. As for hardships, Mr. Taal stands to lose his very freedom, as further detailed below, as well as his ability to pursue his studies and work opportunities, which would stunt his personal and professional life. The government, on the other hand, would suffer little to no harm from not detaining Mr. Taal, as it would still be able to vindicate its interests by pursuing both litigation on the merits of this matter in addition to any removal proceedings it chooses to initiate.

## II.  MR. TAAL WOULD SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

In addition to the harm to his First Amendment and other rights, in the absence of injunctive relief, Mr. Taal faces irreparable injury to his liberty in the form of unconstitutional detention. "'Several courts in this circuit have,' quite properly I would add, 'concluded that the deprivation of an alien's

liberty is, in and of itself, irreparable harm.'" *Velesaca v. Decker*, 458 F. Supp. 3d 224, 240-41 (S.D.N.Y. 2020) (quoting *Sajous v. Decker*, 18-CV-2447, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2013)); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) ("Any amount of actual jail time is significant[] and has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration." (cleaned up)). A constitutional violation, moreover, constitutes irreparable harm. *See Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) (noting that "it is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm") (emphasis in original); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (cleaned up); *see also Hardy v. Fischer*, 701 F. Supp. 2d 614, 619 (S.D.N.Y. 2010) ("Alleged violations of constitutional rights are commonly considered irreparable injuries for the purposes of a preliminary injunction.").

## III.   THE BALANCR OF EQUITIES AND PUBLIC INTEREST WEIGH IN FAVOR OF INJUNCTIVE RELIEF

"Where the Government is the opposing party, the final two factors in the temporary restraining order analysis—the balance of equities and the public interest—merge." *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020). Here, the balance of hardships overwhelmingly favors Mr. Taal. He, as well as the public at large, faces irreparable injury if an injunction is not granted. The public interest is "best served by ensuring the constitutional rights of persons within the United States are upheld." *Id.* (quoting *Sajous*, 2018 WL 2357266, at *13). Conversely, the government cannot assert any legitimate interest in carrying out retaliatory, viewpoint-discriminatory detention. *Cf. L.V.M. v. Lloyd*, 318 F. Supp. 601, 620 (S.D.N.Y. 2018) ("[T]his Court is hard-pressed to see how setting aside [a policy preventing release from immigration

detention] could be against the public interest[, as the government] cannot suffer any harm from an injunction that terminates an unlawful practice.").

Beyond the public's interest in ensuring detention is justified, which weighs overwhelmingly in favor of granting the requested injunction, courts routinely emphasize that "securing First Amendment rights is in the public interest." *N.Y. Progress & PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Where suppression of speech is at issue, government action "harms not only the speaker, but also the public to whom the speech would be directed." *Sindicato Puertorriqueno de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012); *cf. Ragbir*, 923 F.3d at 71 ("[T]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only [non-citizen] activists . . . but also . . . citizens and other residents."). The public interest thus weighs heavily in favor of relief enjoining the government's retaliatory and viewpoint-discriminatory detention of Mr. Taal.

## CONCLUSION

For these reasons, Mr. Taal respectfully requests that the Court grant his motion and, pending resolution of his request for a preliminary injunction, issue a temporary restraining order barring the government from detaining him based on his protected speech and in the absence of independent, legitimate grounds.[4]

Dated: March 27, 2025                    Respectfully submitted,

s/ Eric Lee                              s/ Chris Godshall-Bennett
MI Bar No. P80058                        DC Bar No. 1780920
Attorney for Plaintiffs                  Attorney for Plaintiffs

---

[4] As reflected in the Proposed Order filed herewith, Mr. Taal also requests that the Court require Defendants-Respondents to provide sufficient advance notice to the Court and counsel, should they seek to detain Mr. Taal on any other asserted basis pending the Court's decision on a preliminary injunction, to enable Mr. Taal an opportunity to be heard regarding whether any such asserted basis for detention constitutes a pretext for First Amendment retaliation or raises other, related constitutional problems.

24225 W 9 Mile Rd., Suite 140
Southfield, MI 48033
Telephone: (248) 602-0936
Fax: (202) 333-6470
Email: ca.ericlee@gmail.com

**s/ Mohammad Saleem**
NY Bar No. 4842753
Attorney for Plaintiffs
Davis Ndanusa Ikhlas & Saleem LLP
26 Court St., Suite 603
Brooklyn, NY 11242
Telephone: (718) 783-6819
Fax: (855) 852-4742
Email: msaleem@dnislaw.com

**s/ Jonathan Wallace**
NY Bar No. 1733757
Attorney for Plaintiffs
P.O. Box 728
Amagansett, NY 11930
Telephone: (917) 359-6234
Fax: (202) 333-6470
Email: jonathan.wallace80@gmail.com

American-Arab Anti-Discrimination Committee
910 17th St. NW, Suite 1000
Washington, D.C. 20006
Telephone: (202) 465-4247
Fax: (202) 333-6470
Email: cgb@adc.org

**s/ Maria Kari**
TX Bar No. 24127161
Attorney for Plaintiffs
Project TAHA
5300 N Braeswood Blvd., Suite 4-191
Houston, TX 77096
Telephone: (205) 862-8005
Fax: (202) 333-6470
Email: info@mariakari.org